Argued September 25, decided October 14, rehearing denied November
20, 1913.

# SCHAEDLER *v.* COLUMBIA CONTRACT CO.

### (135 Pac. 536.)

**Master and Servant—Injuries to Servant—Contributory Negligence—
Statutory Provisions.**

1.  Employers' liability act (Laws of 1911, p. 16), Section 6, pro-
viding that the contributory negligence of the person injured shall
not be a defense, although it may be considered by the jury in award-
ing damages, does not apply to all personal injury actions, but only
to those specified in Section 1 of that act.

**Statutes—Construction—Legislative Intent.**

2.  The legislative intent is to be ascertained from the language
employed, which, when ambiguous, is to be viewed in the light of the
circumstances that induced the enactment and the purpose sought to
be accomplished, giving all parts such interpretation, if possible, as
will carry them into effect.

**Appeal and Error—Harmless Error—Instructions.**

3.  Error by the trial court in instructing that contributory negli-
gence was not a bar to an action by a servant against her master,
not brought under the employers' liability act (Laws 1911, p. 16), does
not require a reversal of a judgment in her favor, where the record
shows the master to have been grossly negligent, in view of Article
VII, Section 3, of the Constitution, providing that, if the judgment
appealed from was such as should have been rendered, it shall be
affirmed, notwithstanding any error committed during the trial.

From Multnomah: Robert G. Morrow, Judge.

Department 1.    Statement by Mr. Justice Moore.

This is an action by Olive Mae Schaedler against
the Columbia Contract Company, a corporation, to
recover damages for a personal injury.    The facts are
that the defendant, a corporation, is a dealer in sand,
gravel and crushed rock, which material it transports
on the Columbia and Willamette Rivers to Portland
by barges that are towed by steamboats.    The defend-
ant owns at that city on the east side of the Willamette
River a wharf, the deck of which rests upon piling
driven into the ground.    At the south end of the wharf

is an incline extending westerly from the grade of a street to a line a little above ordinary low water. Beneath the flooring of the wharf is a walk made of three planks, each 12 inches wide, resting upon joists that are spiked to the piling. The south end of the path is connected with the incline, and extends northerly parallel with and near the west side of the wharf. The plaintiff on September 12, 1911, was in the defendant's employ as a cook on one of its steamboats, which tug, reaching Portland about 10 o'clock P. M. of that day, was made fast to the side of a barge, which vessel was fastened to the side of another barge, and the latter was tied up to the left side of the wharf. Soon after the steamboat landed, the plaintiff, in order to secure some clean clothing, left the tug, crossed the decks of the barges, ascended a ladder at the west side of the wharf to the plank walk, along which she passed to the incline, and thence to the street, where she took a car to the house of a family with whom she made her home. Having obtained the required wearing apparel, and desiring to board the steamboat so as to prepare an early breakfast for the crew, the plaintiff returned to the wharf a little after midnight, and attempted to retrace the course taken when leaving the vessel; but, owing to an insufficiency of light beneath the wharf, she passed the ladder, and going farther north stepped into an opening in the walk, made by removing a piece of one of the planks, and falling upon her side was injured.

The complaint details the facts, a brief statement of which are hereinbefore set forth, and alleges that the defendant negligently maintained a plank walk, more than 20 feet above the ground, without keeping up along the margin of the way a handrail or other protection which could have been used without impairing the efficiency of the walk, and that in consequence of

such carelessness the plaintiff was hurt to her damage, etc.

The answer denied the negligence alleged, and for separate defenses averred in substance that the plaintiff assumed the risk causing the hurt, which hazard was incident to her employment, and that the injury of which she complained was the result of her contributory negligence.

The reply controverted the allegations of new matter in the answer, and, the cause having been tried, the jury found specially that by the exercise of reasonable care the plaintiff could not have seen the hole into which she fell. The general verdict was in her favor in the sum of $5,146.50, and, judgment having been rendered thereon, the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. A. L. Clark* and *Messrs. Wilbur, Spencer & Dibble,* with an oral argument by *Mr. Clark.*

For respondent there was a brief over the name of *Messrs. Westbrook & Westbrook,* with an oral argument by *Mr. J. W. Westbrook.*

Mr. Justice Moore delivered the opinion of the court.

1. The court told the jury that, though the facts set forth in the complaint stated a case within the provisions of the employers' liability act, the evidence, however, failed to establish such averment. The jury were further instructed in effect that the plaintiff's contributory negligence, if they should find her guilty thereof, was not a bar to the maintenance of the action, but was a circumstance which they should consider in the reduction of damages to which she might otherwise be entitled. An exception having been

taken by defendant's counsel to the latter instruction, it is contended that an error was committed in so charging the jury.

The substance of the language thus complained of is to be found in Section 6 of the act to which the court referred: Laws 1911, p. 16. The parts of that statute deemed to be involved herein will be quoted, to wit:

Section 1: "All owners, contractors, subcontractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all metal, wood, rope, glass, rubber, gutta percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects, and all scaffolding, staging, false work or other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure, and such structure shall not at any time be overloaded or overcrowded; and all scaffolding, staging or other structure more than twenty feet from the ground or floor shall be secured from swaying and provided with a strong and efficient safety rail or other contrivance, so as to prevent any person from falling therefrom, and all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and all shafts, wells, floor openings and similar places of danger shall be inclosed, and all machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employees or other

persons and the operator of the motive power, and in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or the employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come in contact with the wire, and dead wires shall not be mingled with live wires, nor strung upon the same support, and the arms or supports bearing live wires shall be especially designated by a color or other designation which is instantly apparent and live electrical wires carrying a dangerous voltage shall be strung at such distance from the poles or supports as to permit repairmen to freely engage in their work without danger of shock; and generally all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliances and devices."

Section 6. "The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing amount of the damage."

The question to be considered is whether or not the framers of that act and the people who adopted it, under an exercise of the initiative power, intended to make Section 6 thereof applicable to all actions for the recovery of damages for a personal injury, or only to such causes as are specified in Section 1 of the act.

2. The legislative intention is to be ascertained from the language employed, which, when ambiguous, is to be viewed in the light of the circumstances that in-

duced the enactment and of the objects and purposes sought thereby to be accomplished, taking into consideration the general scope of the statute, all parts of which should, if possible, receive such an interpretation as will carry them into effect: *State ex rel.* v. *Simon,* 20 Or. 365 (26 Pac. 170); *Northern Counties Trust* v. *Sears,* 30 Or. 388 (41 Pac. 931, 35 L. R. A. 188); *Riggs* v. *Polk County,* 51 Or. 509 (95 Pac. 5).

Applying this rule to the employers' liability act, Section 6 thereof cannot be construed in connection with any other provision of the law relating to the principle that a plaintiff cannot recover damage for a personal injury which he may have sustained, if by the exercise of due care on his part he might have avoided the consequence of defendant's negligence, for that doctrine is an expansion of the common law, and does not depend upon any general legislative precept: *Caspar* v. *Lewin,* 83 Kan. 799 (109 Pac. 657, 667). Though the term "contributory negligence" is used in Section 6976, L. O. L., the phrase is so rarely employed in the statute that at most it can be regarded as an exception only to the doctrine of the common law. No other section of Lord's Oregon Laws is *in pari materia* with the employers' liability act, and, though the latter statute is remedial, and should be liberally construed in order to effectuate the legislative intent as to each provision, it is not believed that Section 6 should be so extended as to embrace a cause of action that is not clearly within the enactment.

If it had been the intention of the framers of the act to make that section universally applicable in personal injury cases, the clause would have been so worded as unmistakably to have expressed that meaning. No doubt respecting the intention could have arisen if the language had been as follows: "In all actions to recover damages for a personal injury,

67 Or.—27

whether the cause arose under the provisions of this act or not, the contributory negligence of the person hurt shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage,'' or any other form of expression of similar import.

A careful examination of Section 1 of the act will convince any disinterested person, who is learned in the law, that there are many causes that might produce a personal injury to an employee that are not specified in that provision of the statute. In order to recover damages not thus enumerated, resort must be had to the principles of the common law. It will be kept in mind that the complaint herein alleged that the defendant was negligent in failing to sustain along the plank walk a handrail, which protection could have been maintained without impairing the efficiency of the way, thus bringing the action within one of the provisions specified in the employers' liability act. At the trial the testimony disclosed that the proximate cause of the injury was not the absence of a rail but an opening in the plank walk, thereby defeating the remedy under that act. The complaint particularly set forth the facts with respect to the cause of the injury, the extent thereof, and the defendant's alleged negligence, and, though the provisions of the act in question were by the evidence rendered inapplicable, the principles of the common law are controlling, and the action is necessarily governed thereby. Such being the case, an error was committed in giving the instruction that has been challenged.

3. Notwithstanding such error, a careful examination of the testimony which is attached to the bill of exceptions, when read in connection with the special verdict, convinces us that the carelessness manifested in leaving an opening in the plank walk was gross.

Article VII, Section 3 of the Constitution of Oregon, as amended November 8, 1910, declares that "No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict": L. O. L. xxiv. When an erroneous instruction has not in all probability caused to be returned an improper verdict, the judgment based thereon ought not to be disturbed on appeal, if from an examination of the entire testimony given at the trial when attached to the bill of exceptions, it appears that the final determination of the rights of the parties to an action was such as it ought to have been: *State* v. *Rader,* 62 Or. 37 (124 Pac. 195).

Believing that the transcript in this cause shows that a proper conclusion was reached, the clause of the organic law referred to justifies an affirmance of the judgment, which is ordered.                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.