Argued March 12, affirmed April 13, rehearing denied June 22, 1915.

# NIELSEN *v.* PORTLAND GAS & COKE CO.*

(147 Pac. 554.)

Release—Relief—Fraud—Evidence.

1. A release obtained from an injured person who acts without independent counsel or advice should be scrutinized with great care, and, upon proof of any facts fairly tending to show fraud or unconscionable advantage in obtaining it, a jury would be warranted in finding it of no effect.

Release—Conclusiveness—Fraud.

2. Where the evidence discloses no fact or circumstances upon which to base a finding that a release of liability for personal injury was tainted with fraud or imposition, the verdict of a jury upholding the release should not be disturbed.

Release—Vacation—Mistake.

3. In an action for personal injury, that plaintiff may have made an unwise bargain and have been mistaken as to the extent of his injury is no sufficient reason for annulling his release fairly made and executed without any fraud on the part of the defendant.

Release—Validity—Fraud.

4. Unless plaintiff in an action against his master for personal injury was deceived in some way, his release of liability therefor was binding, but, if he was deceived by the doctor employed by defendant, there would be deception by the defendant, and to constitute fraud a representation must be false, as known to defendant actually or by the exercise of ordinary diligence, and made with intent to deceive, and the plaintiff must have been thereby induced to execute the release.

> [As to necessity of returning or tendering consideration upon repudiation of release. of damages for personal injuries procured by fraud, see note in Ann. Cas. 1912D, 1084.]

Release—Question for Jury.

5. In a servant's action for injury, evidence *held* not to justify instruction permitting jury to ignore plaintiff's release of damages on account of his innocent mistake as to the extent of his injury.

---

*For cases passing upon the right, in an action at law, to attack release for fraud, see note in 20 L. R. A. (N. S.) 915.

As to effect of false representations by physician to avoid release, see notes in 5 L. R. A. (N. S.) 663, and 50 L. R. A. (N. S.) 1091.

As to the effect of mistake of servant as to extent of injuries received by him for which he has given a release, see notes in 11 L. R. A. (N. S.) 201 and 48 L. R. A. (N. S.) 449.

Upon the constitutionality, application and effect of the Federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 38.

REPORTER.

Master and Servant—Action for Injury—Employers' Liability Act.

6.  Under the Employers' Liability Act (Laws 1911, p. 16), providing that all persons engaged in the construction of any building or other structure shall use all practicable care for the safety of life and limb, without regard to the cost of safety appliances, a servant's action for injury from the falling of a heavy valve while it was being raised by an improvised derrick came within the general clause of the act, and the employer's negligence in failing to fasten the ends of a pole so as to provide a safe place for plaintiff to work would be a violation of the act.

[As to what is "accident arising out of and in course of employment" within Employers' Liability Act, see note in Ann. Cas. 1914D, 1284.]

Appeal and Error—Affirmance Without Prejudice—Constitutional Provisions.

7.  Notwithstanding error in not predicating the case upon the Employers' Liability Act, and in view of Article VII, Section 3, of the Constitution, providing that, if the judgment appealed from was such as should have been rendered, it shall be affirmed notwithstanding any error, committed during the trial, the judgment of the Circuit Court finding that a servant's release of damages for the injury was not procured by fraud will be affirmed without prejudice to his right to sue to cancel the release.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by Harald Nielsen against the Portland Gas & Coke Company, a corporation, to recover damages for a personal injury alleged to have been caused by the defendant's negligence, setting forth the particulars thereof. The answer denied the negligence charged, and for separate defenses averred, in effect: (1) That the plaintiff was an experienced workman who knew and appreciated the dangers to which he was exposed, and assumed the risks incident thereto; (2) that, if the injury complained of was caused by the carelessness of a person other than the plaintiff, the hurt resulted from the negligence of a fellow-servant; (3) that the accident was unavoidable; and (4) that for a valuable consideration the plaintiff executed to the defendant a release, acknowledging full satisfaction and discharge of all claims for dam-

ages arising from, or that might accrue on account of the injury, detailing the facts as to each defense. The reply denied the averments of new matter in the answer, and alleged substantially that the release was procured by the wrongful misrepresentations of the defendant's agent, giving the circumstances thereof. Based on· these issues the cause was tried, resulting in a verdict and judgment for the defendant, from which the plaintiff appeals.

The testimony shows that on August 25, 1913, the plaintiff and others employed by the company were engaged in constructing for it at Linton, Oregon, a building to be used in manufacturing briquettes for fuel. A part of the work required the raising about 6 feet from the ground of an iron T-valve, weighing about 500 pounds, placing it in the wall of the building, and securely bolting it. In order to hoist the weight to the proper height, a timber 6"x10"x12′, called a "gin pole," was set at an angle against the wall and used as a derrick. A rope was fastened at the top of the plank, forming a sling into which the hook of a heavy iron block was inserted, and from this pulley a chain descended slantingly to another iron block hooked to a sling around the valve. When the weight was being raised by the employees who were hauling on the chain tackle the defendant's overseer directed the plaintiff to go beneath the gin pole and when the valve reached the proper height to bolt it in position. As this order was being obeyed the top of the plank slipped toward the valve, and the improvised derrick, falling; struck the plaintiff's left shoulder, making a bruise along his back. He soon recovered from the shock and tried to resume labor, but his back hurt him so much that he was unable to continue the work,

whereupon he was given a written order to call for treatment upon Dr. O. B. Wight, a physician at Portland, who had been engaged by the defendant to care for its employees when they were hurt while performing services for it. Dr. Wight carefully examined Nielsen when the latter called at the former's office, and found a scratch extending downward from his left shoulder blade, and a very tender spot on his back over the region of the lower ribs, but concluded the muscles only were injured. The next day the physician again saw the plaintiff, who complained of a very severe pain in the back. Another careful examination of the patient was then made by the doctor, who saw him about seven times in two weeks, during which time the scratch had disappeared. As no other evidence of injury was ascertained by Dr. Wight he advised Nielsen to return to his work, telling him some easy job would be given him, and that his injury was slight. Thereupon the plaintiff resumed his labor, doing such easy work as was assigned him. It appears that two or three days after the accident Nielsen thought one of his ribs was broken, and so told the foreman. On September 6th, apparently believing the physician's statement as to the extent of his injury, and relying thereon, in consideration of $40, paid by the defendant's agent, he subscribed his name to a writing under seal, acknowledging full satisfaction of and discharging defendant from all claims arising or that might accrue in any manner from the injuries received. Nielsen was unable to perform the light duties required of him, and, suffering pain from the injuries which he had received from the fall of the derrick in November, he consulted another physician, who made an X-ray examination of his back and discovered

one of the lower ribs on the left side had been frac-
tured near the spinal column, whereupon this action
was instituted without returning or offering to repay
the money which he had received as a consideration
for the release.

Concluding that the action was founded upon the
principles of the common law, and not upon a viola-
tion of any of the provisions of the Employers' Lia-
bility Act, the court instructed the jury in respect to
the separate defenses of the assumption of risk, the
carelessness of a fellow-servant, and the plaintiff's
contributing negligence. Exceptions were reserved by
his counsel as to these parts of the charge. It is ar-
gued that, since the pleadings admit, and the testimony
conclusively shows, that the defendant was engaged
in the construction of a building when the plaintiff was
injured, his remedy is predicated upon the statute re-
ferred to, and not upon the principles of the common
law, and hence errors were committed in the respects
mentioned.         AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the names of
*Mr. Isham N. Smith, Edwin V. Littlefield* and *Mr. L.
E. Huntsman,* with an oral argument by *Mr. Isham
N. Smith.*

For respondent there was a brief over the name
of *Messrs. Senn, Ekwall & Recken,* with an oral argu-
ment by *Mr. Frank S. Senn.*

MR. JUSTICE BEAN delivered the opinion of the court.

The first question for solution is in regard to the set-
tlement and release. Plaintiff avers in his reply that
the physician employed by the defendant "wrongfully
and without right kept secret and failed to disclose to

this plaintiff the character and nature of his said injuries, and, upon the assurances of said physician" that his injury was not serious, as detailed, and without knowledge of his true condition, he did agree with defendant to satisfy, release and discharge the latter from any further liability in consideration of the sum of $40. The evidence on this subject is in part as follows:

"The doctor said there was nothing wrong with me, only my muscles were hurt. * * I was down there. They kept saying all the time, 'Don't sue us; we will take care of you; don't go to law about it.' * *

"Q. Did you tell them that you were going to sue them at that time?

"A. No, sir; I simply had good faith in the company's superintendent; Mr. Ross told me that he would support me and take care of me, and I told him that I couldn't do that work."

To the question, "What did you find to be the matter with him?" Dr. Wight the company's physician, testified in part as follows:

"He had—I saw him in the morning, one morning up in my office—I have forgotten the exact date—and he told me that he had been struck in the back, and I had him strip to the waist and examined his back. He had a scratch on it running from the left shoulder blade down toward the mid line about, I should judge, about a foot long; it wasn't deep, and there was no other external evidences of injury. I examined his back, and he was very tender over, I should say, about the region of the ninth, tenth, and eleventh ribs, about two inches from the middle line, but I got him to bend over, and his back was apparently flexible, and I could make out nothing more than an injury, what I considered an injury to the muscles along in the back. I think I gave him some liniment, something of that sort, and told him to return the next day, and I saw him the

next day, and he still complained of this very severe pain, which was, in a sense, out of proportion to the external evidence of any injury, and I stripped his back, and I saw him off and on then, I think, probably six or seven times in two weeks, or approximately two weeks from the time that he first came to the office, and the condition had cleared up considerably. The scratch had disappeared in three or four days, and I could make out no other evidence of injury than that, and I suggested that he had better go back to work, and that he could get some easy job for a short time, and in that way he would be able to keep on with his work. I thought there was nothing serious as far as the injury was concerned.

"Q. Did you ever examine him for any fractured ribs?

"A. My examination would have made out any— He was very tender, and I examined his back carefully because I naturally thought of that possibility if the condition continued."

On cross-examination the doctor admits that he never made an X-ray picture; that at the time Mr. Nielsen was hurt there were large X-ray machines in Portland; that it is difficult to recognize a fracture by the fingers; and that his examination was digital.

The trial court treated the allegations of the reply as a foundation of fraud, and submitted the question to the jury upon the basis of the fraudulent representations made by the physician. It charged the jury that, unless the plaintiff was deceived in some way, the release was binding; that, if he was deceived by the doctor employed by the defendant, it would be the same as being deceived by the company; that, to constitute fraud, the representation made must be false, the defendant must have known it to be false, or by the exercise of ordinary diligence should have known it to be false and made with intent to deceive, and that

the plaintiff must have relied thereon and have been led to execute the release. Plaintiff's counsel objected, and excepted to the instruction, and requested the court to charge the jury from the standpoint of a mistake as follows:

"If you believe that at the time the release was signed that Mr. Nielsen did not know his true condition, then the release would not be binding, and you must hold such release void. If you believe that Mr. Nielsen went to a doctor selected by the gas company, and that such doctor did not disclose to the plaintiff the true condition of his injury, and that Mr. Nielsen made the release in ignorance of his true condition, then you are instructed that the release is no part of this case, and you will disregard it in arriving at the verdict."

After a very careful examination of all the evidence, we believe that nothing more can be claimed by plaintiff than that Dr. Wight failed to make a proper diagnosis of his injury; that after the settlement it was ascertained that his injury was greater than it was supposed to be; and that the jury found by its verdict that there was no fraud or imposition practiced upon plaintiff in making the settlement and obtaining the release. From the brief and argument of plaintiff's counsel, as well as from the requested instruction, it seems that plaintiff's contention is that the release should be avoided on the ground of mistake. The good faith of the company's physician in giving the information is not impugned.

1. An agreement of settlement and release obtained from an injured person who acts without independent counsel or advice should be scrutinized with great care, and, upon proof of any fact or facts fairly tending to show fraud or unconscionable advantage in obtaining

it, a jury would be warranted in finding such settlement to be of no effect: *Olston* v. *Oregon W. P. Ry. Co.,* 52 Or. 343 (20 L. R. A. (N. S.) 915, 96 Pac. 1095, 97 Pac. 538); *Foster* v. *University Lumber Co.,* 65 Or. 46 (131 Pac. 736); *Woods* v. *Wikstrom,* 67 Or. 581 (135 Pac. 192).

2. Where the evidence discloses no fact or circumstances upon which to base a finding that the settlement was tainted with fraud or imposition, as in the present case, the verdict of the jury upholding such an adjustment should not be disturbed: *Nason* v. *Chicago, R. I. & P. Ry. Co.,* 140 Iowa, 533 (118 N. W. 751, 753); *Nelson* v. *Minneapolis St. Ry. Co.,* 61 Minn. 167 (63 N. W. 486); *Chicago & N. W. Ry. Co.* v. *Wilcox,* 116 Fed. 913 (54 C. C. A. 147); *San Antonio & A. P. Ry. Co.* v. *Polka,* 57 Tex. Civ. App. 626 (124 S. W. 226, 229); *Lawton* v. *Charleston etc. Ry. Co.,* 91 S. C. 332 (74 S. E. 750).

3. In an action at law for personal injuries, the fact that the plaintiff may have made an unwise bargain and been mistaken as to the extent of his injuries is not a sufficient reason for annulling a settlement and canceling a release fairly made and executed without any fraud or overreaching on the part of defendant: *McFarland* v. *Missouri Pac. Ry. Co.,* 125 Mo. 253 (28 S. W. 590, 596).

4, 5. There was no error in the giving of the instruction as to fraud, which, we think, fairly submitted to the jury the question pertaining to the release and in refusing to give the requested instruction permitting the jury to ignore the release on account of an innocent mistake.   Counsel for plaintiff cite.and rely upon the very able opinion in the case of *Lumley* v. *Wabash R. Co.,* 76 Fed. 66 (22 C. C. A. 60).   This was an

equity suit for the purpose of canceling a release obtained by fraud. It was stated therein: "Equity relieves from mistakes as well as fraud."

6. Having arrived at the conclusion that the claim of plaintiff was settled, as found by the verdict of the jury, we must consider the effect of any error of the trial court in holding that the case did not come within the provisions of the Employers' Liability Act (Laws 1911, p. 16). We think the position of plaintiff that the cause should be tried under the statute referred to is well taken. However, viewing the evidence from every angle, if the settlement is upheld, as it must be upon the verdict of the jury, there can be no reason for remanding the cause for a new trial. It should be noted that the law relied upon as applicable to this case enacts, in effect, that all owners or persons whatsoever engaged in the construction, repairing, or painting of any building or other structure, or in the erection or operation of any machinery, or in the use of any dangerous appliance or substance, shall see that all metal, wood or other material whatever shall be carefully selected and inspected and tested, so as to detect any defects, and all scaffolding, staging, false work or other temporary structure shall be constructed to bear four times the maximum weight to be sustained; and all scaffolding more than 20 feet from the ground or floor shall be secured from swaying and provided with a strong safety rail or other contrivance, so as to prevent any person from falling therefrom; and generally, all owners and other persons having charge of, or responsible for any work involving a risk or danger to the employees, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and

limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.

The plaintiff and defendant both assert that at the time of the accident defendant was engaged in the construction of a building, and that plaintiff was employed in assistance thereof. The use to be made of the valve which they were raising at the time, and which they assert was a part of the building is not thoroughly explained; but, strictly speaking, whether it was a part of the building or of the machinery would make no difference. It was part of the structure, and undoubtedly the parties were correct in saying that the defendant was engaged in constructing the building. The improvised derrick or gin pole and block and tackle in use at the time of the accident are in the same category as the staging, false work and other things mentioned in the act, all of which are not attempted to be detailed therein, and unquestionably come within the general clause of the section. If there was negligence on the part of the defendant in failing to fasten the end of the gin pole so as to provide a safe place for the plaintiff to work in putting the bolts through the T-valve, which he was attempting to do under the direction of his foreman, there would be an infraction of the Employers' Liability Act: *Heiser* v. *Shasta Water Co.*, 71 Or. 566 (143 Pac. 917) ; *Schulte* v. *Pacific Paper Co.*, 67 Or. 334 (135 Pac. 527, 136 Pac. 5) ; *Dunn* v. *Orchard Land & Timber Co.*, 68 Or. 97 (136 Pac. 872, 874) ; *Browning* v. *Smiley-Lampert Lbr. Co.*, 68 Or. 502 (137 Pac. 777, 779) ; *Schaller* v. *Pacific Brick Co.*, 70 Or. 557 (139 Pac. 913) ; *Isaacson* v. *Beaver Logging Co.*, 73 Or. 28 (143 Pac. 938) ; *Cam-*

*eron* v. *Pacific Lime & Gypsum Co.,* 73 Or. 510 (144 Pac. 446).

7. Nevertheless, owing to our views heretofore expressed, giving to the provisions of Section 3 of Article VII of the Constitution a partial application, and not a literal one, the judgment of the Circuit Court should be upheld without prejudice to plaintiff's right to institute a suit to cancel the release, notwithstanding there was error in not predicating the case upon the statute: *Wasiljeff* v. *Hawley P. & P. Co.,* 68 Or. 487 (137 Pac. 755, 759); *Schaedler* v. *Columbia Contract Co.,* 67 Or. 412 (135 Pac. 536).

The judgment of the lower court is therefore affirmed.    Affirmed.  Rehearing Denied.

Mr. Justice Benson and Mr. Justice Harris concur.

Mr. Chief Justice Moore concurs in the result.