Argued and submitted June 7, affirmed October 23, 1985

ALLEN,
*Appellant,*

*v.*

KAISER FOUNDATION HOSPITAL, INC. et al,
*Respondents.*

ALLEN,
*Appellant,*

*v.*

KAISER FOUNDATION HOSPITAL, INC. et al,
*Defendants,*

COOPER,
*Respondent.*

(A8109-05461; A8212-07909; CA A30448)

707 P2d 1289

J. Michael Alexander, Salem, argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Emil R. Berg, Portland, argued the cause for respondents Kaiser Foundation Hospital, Inc., Dr. Margaret Jolly, Dr. Larry P. Cooper, Dr. David Ruud, Kaiser Health Plan and Northwest Permanente, P.C. With him on the brief was Hallmark, Griffith & Keating, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon University of Oregon Health Sciences Center. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Richardson and Van Hoomissen, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff[1] appeals judgments entered after a jury verdict in favor of defendants Cooper, Ruud and University of Oregon Health Sciences Center (UOHSC) and after the grant of motions for summary judgment in favor of the other defendants in this medical malpractice case.[2] She assigns various errors relating to the trial court's rulings on vicarious liability and limitation of damages and attacks its grant of summary judgment in favor of defendant Jolly, given on the ground that Jolly was not negligent in her treatment of plaintiff. We affirm the challenged summary judgment and hold that it, together with the jury verdict in favor of the other treating defendants, moots plaintiff's remaining claims.

Plaintiff has a history of psychosis, which was controlled before December, 1980, partly by the use of lithium carbonate. Toward the end of that month, the control effect declined, and plaintiff entered an extreme manic state. By the evening of December 24, 1980, her condition had deteriorated to the extent that her husband took her to the emergency room of Sunnyside Medical Center, a hospital operated by defendant Kaiser Foundation Hospital, Inc. (Kaiser). She was treated with Melaril and lithium at the direction of defendant Jolly, the psychiatrist on duty, and was sent home. Her condition did not improve, and the next day her husband returned her to Sunnyside. She spent most of the afternoon there, receiving Thorazine and Cogentin. Her condition remained poor, and Jolly finally referred her to the UOHSC hospital for in-patient treatment, in accordance with an agreement between UOHSC and defendants Kaiser Health Plan and Northwest Permanente (collectively, Permanente).

At UOHSC, plaintiff was treated by defendants Cooper, a Kaiser psychiatrist with an appointment at the

---

[1] We refer to Kay Allen as plaintiff, although Meredith Allen, her husband, is her conservator and the nominal plaintiff.

[2] There are in fact two cases. Plaintiff originally filed case A8109-05461 in September, 1981. In subsequent pleadings, she vacillated about including defendant Cooper as a defendant. By the time she ultimately decided to include him, it was logistically impossible to amend the complaint in time to comply with the applicable statute of limitations. She therefore filed case A8212-07909, including Cooper as a defendant. The trial court dismissed Cooper from case A8109-05461, on statute of limitations grounds, retained him in case A8212-07909, and consolidated the cases for trial.

medical school, and Ruud, an intern on duty in the psychiatric ward. They gave her Haldol, Thorazine and Benadryl. On the evening of December 26, the UOHSC staff found plaintiff without vital signs. Although they saved her life with emergency procedures, she suffered severe brain damage and now requires constant care. The heart of plaintiff's malpractice claim is that the medications she received, in particular the large dosages of Haldol, produced cardiorespiratory arrest and that her physicians were negligent in giving those medications.

■ ■ Most of plaintiff's assignments of error, and the major portions of her briefs, relate to theories on which she seeks to hold Kaiser and Permanente vicariously liable for the actions of the physicians or to avoid the damage limitations of the Tort Claims Act for the treatment she received at UOHSC. Those issues are material only if plaintiff can first show that one of the treating physicians committed malpractice. The jury found that Cooper and Ruud did not commit malpractice. The only error plaintiff assigns which relates to that verdict concerns the court's instructions on vicarious liability. Because the jury found that there was no negligence, there could be no vicarious liability, and the issue is moot. The issues relating to damage limitations are also moot. Plaintiff had a full opportunity to present evidence of Cooper's and Ruud's negligence; a different potential damage award would not have affected the evidence admissible on the negligence issue.

The other treating physician, Jolly, saw plaintiff only at Sunnyside. The court granted her motion for summary judgment before the trial; plaintiff assigns that ruling as error. If the court's action was proper, the remaining assignments of error are moot.

Plaintiff's complaint alleged that Jolly was negligent in (1) prescribing excessive doses of Thorazine, Cogentin, Haldol and lithium; (2) moving plaintiff to UOHSC without the use of trained personnel or an ambulance; and (3) failing to send medical charts and records concerning plaintiff or other information about her condition to UOHSC.[3] Jolly's

---

[3] Plaintiff also asserted that Jolly was negligent in supervising plaintiff's treatment at UOHSC. Jolly had no involvement in or responsibility for that treatment and thus could not have been negligent with respect to it.

affidavit on the summary judgment motion showed that she had prescribed only Thorazine and Cogentin and that she talked with the psychiatric resident at UOHSC and described plaintiff's condition and previous history to him while plaintiff was on her way there. There was also evidence that Sunnyside gave plaintiff's husband a sealed envelope to take to the UOHSC emergency room. Jolly also presented affidavits of experts who stated that neither Thorazine nor Cogentin could be responsible for plaintiff's cardiorespiratory arrest and that Jolly's treatment, including sending plaintiff to UOHSC by family car, was consistent with community standards for psychiatric treatment. In response, plaintiff offered the affidavit of a psychiatrist that the care plaintiff received was below the community standard "in the several particulars alleged in the complaint, and particularly in the giving of excessive amounts of Haldol in combination with the drug Lithium. Such dosages were a substantial factor in causing harm to the patient."[4]

Jolly's evidence on summary judgment negated negligence in all the respects plaintiff had alleged. Plaintiff was required, in order to avoid summary judgment, to show that there were genuine issues of fact. Her expert's conclusory statement that there was negligence in the particulars stated in the complaint does no more than rest on the allegations of the complaint. That is not permissible in responding to a motion for summary judgment; an affidavit must "set forth specific facts showing that there is a genuine issue as to any material fact for trial." ORCP 47D. The statements concerning Haldol do set forth such facts, but it was uncontested that Jolly did not prescribe Haldol. The court correctly granted summary judgment in her favor. Because there was no negligence by anyone who acted, the other defendants cannot be vicariously liable. The court did not err in granting summary judgments for them.

Affirmed.

---

[4] All of the affidavits were based on admissible evidence. *Tiedemann v. Radiation Therapy Consultants,* 299 Or 238, 701 P2d 440 (1985).