Argued and submitted January 29, reversed and remanded July 25, reconsideration
denied September 26, petition for review denied October 23, 1990 (310 Or 475)

Carol KIM,
*Appellant,*

*v.*

ALLSTATE INSURANCE COMPANY,
*Respondent.*

(A8712-07704; CA A51008)

795 P2d 582

Howard R. Hedrick, Portland, argued the cause and filed the briefs for appellant.

Thomas W. Sondag, Portland, argued the cause for respondent. With him on the brief was Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

Before Graber, Presiding Judge pro tempore, and Riggs and Edmonds, Judges.

RIGGS, J.

Edmonds, J., specially concurring.

Graber, P. J. pro tempore, dissenting.

**RIGGS, J.**

In this personal injury action under defendant's uninsured motorist coverage, plaintiff appeals from a summary judgment for defendant. She argues that there was a genuine issue of material fact whether she was induced to sign a release because of defendant's alleged misrepresentations and material omissions. Viewing the evidence in the light most favorable to plaintiff, we reverse and remand.

In August, 1986, plaintiff was injured in an accident while a passenger in a car driven by defendant's insured that was struck from behind by a car driven by an uninsured motorist. Approximately two weeks later, on September 2, Reedy, a senior claims examiner for defendant, contacted plaintiff and met her at a restaurant to discuss a settlement. Reedy placed a release form and a checkbook on the table, and they began to discuss her claim and a possible settlement. Plaintiff had no prior experience or knowledge of soft tissue injuries or claim settlement. Neither she nor Reedy had any medical records at the meeting.

Plaintiff stated in her affidavit:

"7.  I relied upon the representation made to me by Mr. Reedy who told me that the maximum I could get for my injuries was $750 whether I went to court or settled for this amount now."

Plaintiff stated in her deposition:

"A.  *Just if it goes to court, do you [Reedy] think I would have any kind — would there be anything that would come of it, I believe is how I said. And he told me — The end result of the conversation was that $750 was the maximum I could get, whether I went to court or —*

"First he offered me 300 and I told him that, no, I thought that I should get more than that. And I believe it was 1500. And then he offered me 750. And I said, well, is that the most I can get? He said yes.

"Q.  And what did you understand he meant that was the most you could get?

"A.  *Well, I understood that's the most that I would get. I figured he knew his job and he was experienced in what he was saying, and I just took him for his word that that would be the most that I could get no matter how I went about it.* And I had no idea, you know, that the pain that I was going to really

start going through. Otherwise, I would have gotten an attorney before I did anything.

"* * * * *

"Q. Did Mr. Reedy tell you that there was only $750 coverage available under the Allstate policy?

"A. Well, he told me about the $5,000 medical. *And his words to me were 750 was the most that I could get. And I believed him to mean that would be all I would get.*

"Q. *If you went to court.*

"A. *For anything.*

"Q. So you agreed to take the $750?

"A. I agreed to take the $750.

"Q. Did he explain to you that that was in full settlement of any claim you might have against Allstate, other than the $5,000 medical expense you might have available to you?

"A. Yes, I'm sure he did." (Emphasis supplied.)

Plaintiff signed the release and subsequently cashed the $750 settlement check.

When she met with Reedy, plaintiff was "in pain" and "hurting a little bit in [her] neck." Later, her injuries were diagnosed as soft tissue strain in her back and neck and crushed vertebrae, which required surgical repair. She also has permanent reduction of flexion, abduction and rotation of her spine and severe headaches.

In December, 1987, plaintiff sued defendant for the injuries that she had sustained. Defendant asserted that her claim was barred, raising the release as an affirmative defense. Plaintiff's reply alleged that the release was obtained by Reedy's misrepresentations and failure to disclose material facts. Defendant filed a summary judgment motion that included the affidavits of Reedy and of defendant's attorney. Plaintiff filed a response, which included her affidavit. The trial court, citing *Wheeler v. White Rock Bottling Co.,* 229 Or

360, 366 P2d 527 (1961), granted defendant's motion on the ground that there was no triable issue of material fact.[1]

Plaintiff argues that summary judgment was improper, because there was sufficient evidence to raise a jury question whether the release was tainted by a misrepresentation made by defendant's claims adjuster, which she alleges in her pleadings, deposition and affidavit, and because proof of those allegations would entitle her to avoid the release.

In *Whitehead v. Montgomery Ward & Co. Inc.*, 194 Or 106, 239 P2d 226 (1952), the Supreme Court said:

> "In order to defeat [the release] on the grounds of fraudulent conduct, it is not necessary that every essential element of actionable fraud be established. If the evidence discloses that plaintiff was induced to enter into [the] agreement by means of defendant's fraud or material misrepresentation, the transaction is voidable as against defendant, and, in this respect, it is immaterial that the misrepresentation may have been innocently made. Where a false representation of a material fact is made, and the party to whom it is made is induced to and does rely thereon in entering into the agreement, that is sufficient for the purpose of avoiding the contract, irrespective of the intent and purpose of the person making the false representation." 195 Or at 131.

Specifically, plaintiff contends that Reedy made material representations of fact and omissions that she relied on to induce her to release defendant's insured from liability for a nominal sum of money. The evidence indicates that plaintiff was induced to, and did rely on, Reedy's representations about the maximum amount that she was entitled to claim when she executed the release agreement. The more difficult issue is whether those statements were material misrepresentations of fact. The alleged misrepresentations were:

> "1.  That her claim would not be worth taking to court;

---

[1] In *Wheeler,* although the court upheld the release's validity, it expressly framed the question as

> "*whether an honest release, untainted by unconscionable conduct,* can be set aside because it was improvident. There is no dodging the question. The plaintiff did not show any misconduct on the part of the defendant or its insurer, and thus eliminated from consideration such cases as *Whitehead v. Montgomery Ward & Co., Inc.,* 194 Or 106, 239 P2d 226." 229 Or at 363. (Emphasis supplied.)

"2. That her claim for injuries had a maximum value of $750;

"3. That Allstate could not pay her any more than $750 for her injuries."

Although defendant makes several arguments in response to plaintiff's allegations, only three need to be addressed.

■ First, defendant disputes that Reedy made a factual representation that plaintiff's claim was worth $750 "no matter how [she] went about it." Instead, it contends that he merely told her how much Allstate was willing to offer her to settle the claim. That argument ignores the context in which Reedy made the statement. The sole purpose of the settlement discussion was to determine the worth of plaintiff's claim. Statements Reedy made as to the "most" that she "could get" went to the very heart of the matter. Plaintiff's deposition testimony was that she asked him about the potential worth of her claim "if it goes to court." Given Reedy's response, a jury could agree with plaintiff and conclude that Reedy made a representation of the absolute maximum value of her claim, rather than a representation about the maximum settlement that Allstate would offer. It is undisputed that Reedy made the statement, and a jury could reasonably draw conflicting inferences about what he meant.

■ Defendant next argues that any statements that Reedy made were only opinions about future events, not representations of fact. That argument fails for two reasons. First, even if his statements were only opinion, they could still be actionable.

"It is recognized, however, that statements of opinion regarding quality, *value* or the like, may be considered as misrepresentations of fact * * * where the parties are not on an equal footing and do not have equal knowledge or means of knowledge * * *." *Holland v. Lentz,* 239 Or 332, 345, 397 P2d 787 (1964). (Citations omitted; emphasis supplied.)[2]

Reedy was an experienced claims adjuster and was clearly not

_____

[2] In *Jeska v. Mulhall,* 71 Or App 819, 822, 693 P2d 1335 (1985), we said:

"To whom, with what knowledge and in what context a defendant makes a statement bears on whether a statement of opinion is a 'mere opinion of value' or an actionable 'misrepresentation of fact.' *See Holland v. Lentz, supra,* 239 Or at 346."

on an equal footing with plaintiff. Plaintiff incorrectly posits that that gives rise to an affirmative obligation on his part to disclose information about soft tissue injuries or to advise her to wait before settling the claim. He had no such duty. However, he did know, or reasonably should have known, that plaintiff was relying on the information that he provided to make important decisions about her claim. Under those circumstances, and even though he was under no obligation to speak, when he undertook to give plaintiff information about the potential success of her legal claim, he had to be truthful. Because the discussion about the potential success of plaintiff's legal claim was arguably ambiguous, a factual issue exists.[3]

Second, if we cannot say, as a matter of law, that the statements were factual representations, or, as a matter of law, that they amounted to nothing more than opinion, there is a question of fact for the jury to decide. *Ward v. Jenson,* 87 Or 314, 320, 170 P 538 (1918).

Defendant's final argument is that plaintiff is contending only that she made a bad bargain. Defendant asserts that plaintiff has not shown that her claim is worth more than $750 and, further, that, even if she did, she still cannot set aside the release, because it was not induced by fraudulent or unconscionable conduct. That begs the question. The issue of fact as to whether the release was "honest [and] untainted by unconscionable conduct" is precisely the issue that precludes summary judgment. *Wheeler v. White Rock Bottling Co., supra.* "Even if the facts are undisputed, if the inferences arising from them are susceptible to more than one reasonable conclusion, summary judgment should not be granted." *Van Osdol v. Knappton Corporation,* 91 Or App 499, 502, 755 P2d 744, *rev den* 306 Or 528 (1988). Because a trier of fact could reasonably draw conflicting inferences about Reedy's statements to plaintiff, the trial court erred in granting summary judgment.

Reversed and remanded.

---

[3] Defendant's other arguments concern the truth or falsity of Reedy's representations and the alleged reasonableness of plaintiff's reliance. The claimed "misrepresentation" is not that plaintiff's claim was only worth $750 but, rather, that Reedy purported to make a representation as to the ultimate maximum value of her claim. The reasonableness of plaintiff's reliance is a factual question for the jury.

**EDMONDS, J.,** specially concurring.

The dissent would hold that this record contains no evidence that the representations made by Reedy were false. The lead opinion holds that a contrary inference can be drawn from plaintiff's testimony quoted in its opinion. I cannot draw such an inference. However, in her affidavit in contravention of defendant's motion, plaintiff averred, "I subsequently found out that Mr. Reedy had been untruthful to me." Plaintiff is entitled to all reasonable inferences from her evidence that can be drawn in her favor and against defendant on a summary judgment motion. *Uihlein v. Albertson's, Inc.,* 282 Or 631, 634, 580 P2d 1014 (1978). The quoted statement follows references by plaintiff in her affidavit regarding Reedy's representations. Without commenting on the admissibility of that testimony, if an objection had been made, I would conclude that it is evidence from which an inference can be drawn that Reedy's representations were false when made. Only on the basis of that inference do I agree with the lead opinion.

**GRABER, P. J.** pro tempore, dissenting.

The lead opinion fails to answer the key question: Was there a genuine issue of material fact that the representation on which plaintiff relied was false? Because the record before the trial court revealed no such issue, it properly granted summary judgment for defendant. Therefore, I dissent.

Plaintiff was riding in a car driven by defendant's insured when it was struck by a car driven by an uninsured motorist. Defendant's policy afforded plaintiff personal injury protection (PIP) coverage up to $5,000 for one year from the date of the accident, plus uninsured motorist coverage up to $25,000. The release at issue relates only to the uninsured motorist coverage and does not affect the PIP coverage. Plaintiff signed the release a little over two weeks after the accident. At the time, her head hurt and her neck "was hurting a little bit," but she felt that "it was pain that was going to go away." According to her affidavit in opposition to the summary judgment motion, she understood that there was $5,000 available to pay further medical bills within a year of the accident but "that $750 was the maximum I could ever get for my pain, suffering or other damages."

The lead opinion correctly notes that plaintiff claims to have relied on Reedy's representations about the worth of her claim. The lead opinion also correctly notes that the evidence before the trial court would have permitted a jury to find that plaintiff relied on Reedy's representation about the worth of the claim when she agreed to accept $750. However, what the lead opinion fails to consider adequately is whether Reedy's representation was false. *If $750 was the maximum value, on September 2, 1986, of plaintiff's claim for pain and suffering,* then there was a representation, but no actionable *mis*representation, even if the worth of plaintiff's claim *later* proved to be greater.

According to her own testimony, plaintiff was suffering from only a little bit of pain. Reedy's affidavit states that plaintiff "appeared to have minor stiffness in her neck and back area" and that her medical bills for soft tissue injury were $202.85. There is no evidence that $750 undervalued plaintiff's claim for pain and suffering as of September 2, 1986, the date on which she alleges that Reedy made a false representation.

The lead opinion fails to respond coherently to that lack of evidence. None of the testimony quoted in the opinion states or implies that plaintiff's claim for pain and suffering was worth more than $750 on the date of the alleged misrepresentation.

The concurrence relies on plaintiff's affidavit, which recites: "I subsequently found out that Mr. Reedy had been untruthful to me." That sentence merely restates the allegations of the complaint in a conclusory fashion.

> "Plaintiff was required, in order to avoid summary judgment, to show that there were genuine issues of fact. Her expert's conclusory statement that there was negligence in the particulars stated in the complaint does no more than rest on the allegations of the complaint. That is not permissible in responding to a motion for summary judgment; an affidavit must 'set forth specific facts showing that there is a genuine issue as to any material fact for trial.' ORCP 47D." *Allen v. Kaiser Foundation Hospital,* 76 Or App 5, 9, 707 P2d 1289 (1985).

Likewise, here, it is not permissible for plaintiff to rely only on

her own conclusory statement that she learned that Reedy's representation was false. ORCP 47 requires more.

Plaintiff's only response to the argument that there is no evidence of falsity is to assert that Reedy had "superior knowledge" and "undertook to give plaintiff legal advice" on which she relied. Implicitly, if not explicitly, she is arguing that the insurer had an obligation to tell her to talk to her own attorney or to wait before settling a claim for a soft tissue injury. The lead opinion properly decides that the insurer does not have that duty.[1] Although plaintiff asserts that there is a genuine issue as to whether her claim for pain and suffering was worth more than $750 on September 2, 1986, she points to no evidence that creates such an issue. Her bare assertion is not enough.

---

[1] The lead opinion's discussion of *Holland v. Lentz,* 239 Or 332, 345, 397 P2d 787 (1964), might leave a different impression. 102 Or App at 534. Here, plaintiff had "equal * * * *means* of knowledge." 239 Or at 345. (Emphasis supplied.) That is, she knew what pain she felt, and she had the *means* to acquire knowledge of the worth of her claim by seeking legal, as well as medical, advice.