Argued and submitted April 6, 1992; resubmitted In Banc April 8, judgment on
plaintiff's claim affirmed; judgment on defendant's counterclaim reversed
May 19, appellant's petition for reconsideration filed July 21 denied; respondent's
petition for reconsideration filed August 19 allowed by opinion November 17, 1993
See 124 Or App 543 (1993)

## DeAnn Faye RAYMOND,
### nka DeAnn Faye Baxter,
*Appellant,*

*v.*

## Thomas Jack FELDMANN,
*Respondent.*

### (89-CV-0372-ST; CA A67087)

853 P2d 297

Paul J. Speck, Bend, argued the cause for appellant. With him on the briefs were Richard E. Forcum and Forcum & Speck, Bend.

Dennis James Hubel, Bend, argued the cause for respondent. On the brief were Howard G. Arnett and Marceau, Karnopp, Petersen, Noteboom & Hubel, Bend.

De MUNIZ, J.

Rossman, J., dissenting.

## De MUNIZ, J.

Plaintiff brought this action after she was injured when her car was struck by a vehicle driven by defendant. The trial court granted a summary judgment for defendant on plaintiff's claim and also on defendant's counterclaim. We affirm in part and reverse in part.

At the time of the accident, plaintiff was 21 years old and had never before been involved in an automobile accident. Four days after the accident, an agent of defendant's insurance company called plaintiff on the telephone. The agent offered to settle plaintiff's personal injury claim for $100 plus payment of her emergency room bill, if plaintiff would promise to release defendant from any further liability for injury claims arising out of the accident. Plaintiff, who was unrepresented by counsel and thought that she had sustained only minor bruises, agreed. The conversation was tape-recorded with plaintiff's consent, but the terms were never put in writing.[1]

Plaintiff later learned that her injuries were more serious than she had initially believed.[2] She returned the $100 check and filed this action, alleging that defendant had been negligent in the operation of his vehicle and that, as a result, she had suffered damages. Defendant asserted an affirmative defense of settlement and release. He also counterclaimed for

---

[1] The release discussion is as follows:

"Q: [by the agent] Okay. We're having this recorded conversation in regards to full and final settlement of bodily injury claim from the accident on the 7th of December, 1987. Is that right?

"A: [by plaintiff] Yes.

"Q: Okay, and as full and final settlement of the injury portion of your claim, we have agreed to send you $100 as well as pay you for your emergency room bill. Is that right?

"A: Yes.

"Q: Okay, and you are in agreement that this is full and final settlement of the injury portion of your claim?

"A: Yes.

"Q: And you further release Allstate * * * and Thomas Feldmann from any further injury claims?

"A: Yes."

[2] Plaintiff's injuries were diagnosed as soft tissue strain in her back and neck.

breach of the release and settlement agreement, seeking attorney fees as damages. The trial court granted defendant's motion for summary judgment on the ground that the release agreement barred plaintiff's action. It also granted summary judgment on the counterclaim and awarded defendant damages of $6,160, the amount of his attorney fees.

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ORCP 47; *Edwards v. Times Mirror Co.*, 102 Or App 440, 442, 795 P2d 564 (1990). We review the record in the light most favorable to plaintiff and draw all reasonable inferences in her favor. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 634, 580 P2d 1014 (1978).

■      Plaintiff argues that the court erred in failing to set aside the release agreement. Release agreements are favored by the law, *Davis v. Bacon*, 280 Or 561, 571 P2d 912 (1977); *Walcutt v. Inform Graphics, Inc.*, 109 Or App 148, 817 P2d 1353 (1991), *rev den* 312 Or 589 (1992), but may be voided if the agreement has been obtained by misrepresentation or unconscionable conduct. *Wheeler v. White Rock Bottling Co.*, 229 Or 360, 363, 366 P2d 527 (1961); *Kim v. Allstate Ins. Co.*, 102 Or App 529, 795 P2d 582, *rev den* 310 Or 475 (1990). Plaintiff has not claimed either. She argues that the agreement should be set aside on the basis of mutual mistake, because, at the time of the agreement, she did not realize the nature and extent of her injuries.

■      In Oregon, mutual mistake is not a basis on which to void a release agreement. In *Wheeler v. White Rock Bottling Co., supra*, the plaintiff argued that she should be allowed to rescind the release agreement on the basis of mutual mistake, because she had incurred substantial medical expenses that were far beyond her contemplation when she signed the release. In rejecting the plaintiff's position, the Supreme Court examined the competing policy arguments and concluded:

> "Heretofore this court has considered the settlement of claims prior to litigation to be in the public interest. * * * There is no reason in principle why an improvident settlement made before trial is any more to be set aside than a judgment rendered upon a verdict that hindsight later proves to have been obtained too soon and for too little. No one has

suggested that judgments in personal injury cases should be kept open like claims under the Workmen's Compensation Act for additional awards in the event of aggravation * * *.

"As noted, there are attractive policy reasons for adopting a rule that would permit perfectly honorable releases to be repudiated in the event of aggravation of an injury or the discovery of undiagnosed injuries. There are less compassionate but equally sound policy reasons for requiring persons of legal age and capacity to contract to stand by their covenants, including bargains containing an element of chance. We [have] reaffirmed the general rule with reference to the stability of untainted release agreements * * *. We are not now disposed to overrule those cases." 229 Or at 366 (Citations omitted.).

■ The dissent attempts to paint a picture of youth, innocence and rightfulness taken advantage of by age, experience and venality to arrive at what it apparently considers a "compassionate" result. That position ignores the law and that the Supreme Court carefully considered the competing policies before determining that release agreements should be upheld. We do not condone the precipitous actions of the adjuster. We also might wish that plaintiff had been more cautious. However, the fact remains that plaintiff is an adult and that she voluntarily entered into an agreement.

The dissent holds that, "as a matter of law, the parties were not negotiating at arm's length." 120 Or App 459. It relies mainly on *Kim v. Allstate Ins. Co., supra.* However, except for the difference in experience between the plaintiff and the adjuster, the facts in *Kim* are not those here. In *Kim*, the adjuster made representations as to what the plaintiff could expect to receive if the matter went to court. We held that a jury could find that the statements made by the adjuster represented the absolute maximum value of the plaintiff's claim, rather than the maximum settlement offer. If so, the release would be tainted by a misrepresentation that would entitle the plaintiff to avoid the release. Plaintiff here does not claim that the agreement was made unconscionably or with misrepresentation. That the agreement was improvident is not a basis on which to void it.

■ Plaintiff's remaining assignments of error addressing the validity of the agreement do not require discussion, and we conclude that the court did not err in granting

defendant summary judgment. However, plaintiff is correct that the court erred in awarding attorney fees to defendant as damages on its counterclaim for breach of contract. Attorney fees are not recoverable for breach of contract unless authorized by the contract or statute. *Brookshire v. Johnson*, 274 Or 19, 544 P2d 164 (1976). Defendant argues that the fees are "foreseeable" damages, because a "reasonable person" would foresee the necessity of an attorney if she "stopped to think about consequences of a breach." Defendant cites *Huffstutter v. Lind*, 250 Or 295, 301, 442 P2d 227 (1968), for the proposition that attorney fees are allowable as damages "in an action against a defendant where the defendant's tortious or wrongful conduct involved the plaintiff in separate litigation." It contends that that rule applies, because the separate litigation was defendant's defense of plaintiff's personal injury action brought in violation of the agreement.

That argument blatantly misapplies *Huffstutter*. The court's statement there addressed attorney fees in the context of a defendant's having involved a plaintiff in prior litigation with a third party. This is a direct action by plaintiff against defendant.

Furthermore, defendant's counterclaim is based on contract, not tort. In the speed to obtain a release, the insurance adjuster failed to include an attorney fee provision in the oral contract. There is no basis for the award.

Judgment on plaintiff's claim affirmed; judgment on defendant's counterclaim reversed.

**ROSSMAN, J.,** dissenting.

The majority, relying on *Wheeler v. White Rock Bottling Co.*, 229 Or 360, 366 P2d 527 (1961), holds the release valid despite the "precipitous actions of the adjuster," 120 Or App at 456, and, in so doing, places its stamp of approval on the adjuster's questionable tactics in securing the release. The majority is absolutely correct that, in Oregon, a release is not rendered invalid on the basis of the parties' mutual mistake regarding the nature and extent of the releasor's personal injuries. 120 Or App at 455; *see Wheeler v. White Rock Bottling Co., supra.* Mutual mistake, however, is not the only basis on which a release may be invalidated. Where, as here, the parties have not dealt at arm's length, a release will

be closely scrutinized before declaring its validity. *Peluck v. Pac. Machine & Blacksmith Co.*, 134 Or 171, 178, 293 P 417 (1930). An intimate and thorough examination of this record exposes a material issue of fact as to whether plaintiff knowingly assented to the terms of the release. Consequently, I would hold that the trial court erred in granting summary judgment for defendant on plaintiff's claim and on defendant's counterclaim.

The first step in the analysis is to determine whether the parties bargained at arm's length. Oregon courts have examined a variety of factors in deciding whether parties to a release agreement have dealt on an equal footing. In *Peluck v. Pac. Machine & Blacksmith Co., supra,* the Supreme Court held that the parties did not deal at arm's length, because the releasor "did not have the benefit of independent advice and he was not in the physical or mental condition to determine matters vitally affecting his welfare." 134 Or at 178. Other cases have also stressed the importance of the releasor having independent advice before entering into the release agreement. *See Broad v. Kelly's Olympian Co.*, 156 Or 216, 232, 66 P2d 485 (1937); *Wood v. Young*, 127 Or 235, 243, 271 P 734 (1928); *Nielson v. Portland Gas & Coke Co.*, 76 Or 505, 512-13, 147 P 554 (1915).

In *Kim v. Allstate Ins. Co.*, 102 Or App 529, 795 P2d 582, *rev den* 310 Or 475 (1990), the plaintiff argued that she was induced to sign a release because of the defendant's alleged misrepresentations of fact concerning the amount that the plaintiff could expect to receive if the matter proceeded to trial. The defendant insurance company contended that the statements made by its claims adjuster were only opinions and, as such, not actionable. We held that statements of opinion "regarding quality, value or the like, may be considered as misrepresentations of fact * * * *where the parties are not on an equal footing* * * *." 102 Or App at 534. (Emphasis supplied.) We noted that the plaintiff, unlike the claims adjuster, had no prior experience or knowledge of soft tissue injuries or the claims settlement process. Based *solely* on the disparity in experience, we held that the parties "were clearly not on an equal footing." 102 Or App at 529.[1]

---

[1] The majority seeks to distinguish *Kim v. Allstate Ins. Co., supra,* on the basis that, there, a material issue of fact existed as to whether the adjuster's statements

Here, plaintiff, a 21-year-old, had never been in an automobile accident before and, like the plaintiff in *Kim v. Allstate Ins. Co., supra,* had no prior experience with soft tissue injuries or the claims settlement process. The record also discloses that plaintiff did not have the benefit of any independent advice, legal or otherwise, before agreeing to the terms of the release. I believe that, as a matter of law, the parties were not negotiating at arm's length. *See Kim v. Allstate Ins. Co., supra; Peluck v. Pac. Machine & Blacksmith Co., supra,* 134 Or at 178. Consequently, the release and the circumstances attending its formation should be closely examined before proclaiming it valid. *Peluck v. Pac. Machine & Blacksmith Co., supra.*

The record reveals that the insurance agent sought out plaintiff only four days after the accident, at a time when plaintiff claims she was "still in shock from the accident." These "rush releases" or "day after the accident settlements" are disfavored by the courts and, when revealed as overly intrusive, should be severely condemned. *See Love v. Home Transp. Co., Inc.,* 131 Ariz 394, 641 P2d 882, 888 (1981); *McGregor v. Mills,* 280 SW2d 161, 162 (Ky 1955); *Toppas v. Perkins' Adm'x,* 268 Ky 186, 104 SW2d 423, 431 (1937); *Wise v. Prescott,* 244 La 157, 151 So 2d 356, 361 (1963). The record further discloses that the terms of the release were communicated to plaintiff over the telephone and were never reduced to writing, making it reasonable to infer that it was difficult for plaintiff to fully evaluate the settlement offer. Bearing in mind that the adjuster did not inform plaintiff as to the legal ramifications of the terms "settlement" or "release," her deposition testimony concerning her understanding of the telephone conversation is elucidating:

were factual representations that could support an allegation of fraud, whereas here, plaintiff does not allege fraud. That distinction, however, is impertinent. I do not cite *Kim* for the proposition that this release should be declared void because it is tainted by a misrepresentation. I rely on *Kim* only for authority that the parties in this case were not dealing at arm's length during the course of their negotiations. Indeed, the majority essentially concedes that the difference in experience between the plaintiff and the adjuster in *Kim* is directly analogous to the difference in experience between the adjuster and plaintiff in this case. As stated in the text, the disparity in experience was the *sole* fact on which we relied in *Kim* to hold that the parties were not dealing at arm's length. Thus, our holding in *Kim* that the adjuster's statements may have supported an action for fraud has absolutely no effect on my determination that the parties in this case were not on an equal footing and does not in any way reduce *Kim's* precedential value.

"Q: Did you understand what was being said to you?

"A: Yes and no. I understood what the words [the agent] was saying to me were, but I didn't understand what I was doing.

"* * * * *

"Q: You don't feel that you have entered into this agreement, at this point in time, I take it?

"A: No.

"Q: Why?

"A: Because I think that I was unsure of what was going on * * *."

After closely examining the circumstances surrounding the formation of this release, I conclude that there exists a material issue of fact as to whether plaintiff knowingly gave her assent to release defendant from liability for all injuries arising out of the accident. *See Peluck v. Pac. Machine & Blacksmith Co., supra.* Accordingly, I would hold that the trial court erred in granting summary judgment for defendant on plaintiff's claim and on defendant's counterclaim.

The majority criticizes my position as an unsanctioned means to reach a "compassionate" result and charges that I am "ignor[ing] the law and that the Supreme Court carefully considered the competing policies before determining that release agreements should be upheld." 120 Or App at 456. What the majority fails to realize is that the policy considerations behind the *Wheeler* court's rejection of mutual mistake as a theory for invalidating release agreements do not reflect an overriding policy to uphold releases regardless of any other infirmities. In other words, the concerns articulated by the Supreme Court in *Wheeler* are relevant only when the legal premise on which the releasor relies to rescind the release is mutual mistake. Here, however, that is not the case. Based on the rule enunciated by the Supreme Court in *Peluck v. Pac. Machine & Blacksmith Co., supra*, it is my contention that the parties did not negotiate at arm's length and that the circumstances surrounding the formation of the release are such that it should not be sustained without further factual findings. That position does not in any way conflict with the "competing policies" expounded by the

*Wheeler* court and reflects a proper application of the relevant legal principles pertaining to the validity of release agreements. It is the majority, not I, that chooses to ignore the law.

I also note, merely for the purpose of comparison, that the facts of *Wheeler v. White Rock Bottling Co., supra,* are far from the facts of this case. In *Wheeler*, the release was in writing, signed and inspected by the plaintiff and procured by the adjuster a full three months after the accident. The plaintiff even "admitted that she read [the document] and fully understood what she was signing * * *." 229 Or at 363. As a result, she could not have claimed that she was incognizant of the consequences of her actions or that she had not knowingly agreed to the terms of the release. The only plausible theory on which she could have relied to invalidate the release was mutual mistake. That is not the case here.

I dissent.[2]

Leeson, J., joins in this dissent.

---

[2] I would, however, commend the majority for its display of a twinge of conscience in refusing to award defendant attorney fees.