Argued and submitted May 11, 1987, order granting new trial reversed and remanded with instructions February 10, 1988

LINDGREN et al,
*Respondents - Cross-Appellants,*

*v.*

BERG,
*Appellant - Cross-Respondent.*

(8308-05244; CA A36918)

749 P2d 1212

Rex Armstrong, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Richard A. Hayden, Stoel, Rives, Boley, Fraser & Wyse and Bogle & Gates, Portland.

Susan R. Swanson, Portland, argued the cause for

respondents - cross-appellants. With her on the briefs was Hampson, Bayless, Murphy & Stiner, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

The Lindgrens (plaintiffs) brought this action against Berg (defendant) and others for fraud, conspiracy and breach of fiduciary duty. Defendant counterclaimed for attorney fees and for damages for breach of contract and fiduciary duty. The trial was lengthy. The jury returned a verdict for plaintiffs for $1 general and $1 punitive damages on their claim for breach of fiduciary duty, but it returned a verdict for defendant on plaintiffs' fraud claim. It returned a verdict for defendant for $1 on his counterclaim for breach of contract and $1 general and $5,000 punitive damages on his counterclaim for breach of fiduciary duty. The court entered judgment accordingly but included an award of $52,000 as attorney fees to plaintiffs for prevailing on defendant's first counterclaim for attorney fees. Subsequently, it set aside the judgment and granted a new trial to plaintiffs and to defendant. Defendant appeals and plaintiffs cross-appeal from that order. ORS 19.010(2)(d).[1]

Although defendant on his appeal and plaintiffs on their cross-appeal make numerous assignments of error, they have either withdrawn or conceded most of them. Moreover, defendant concedes that the court should enter judgment for plaintiffs on his counterclaims. What principally remains is defendant's assignment that the court erred when it denied his motion for a directed verdict on all of plaintiffs' claims on the basis of the parties' release and indemnity agreement (the release).

We review the evidence in the light most favorable to plaintiffs. *Brown v. J.C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984). Defendant and Sundholm arranged to purchase the Hillsboro Mall for $2,000,000, with a $325,000 down payment. Defendant then interested plaintiffs, Rumpakis and Crosswhite, in purchasing the mall for $2,300,000, with a $625,000 down payment. Defendant and Sundholm then purchased the mall from the owners, but defendant was not named as a purchaser. On the same day, they sold the mall to the Lindgren-Hillsboro Mall Joint Venture for $2,300,000, with a $625,000 down payment, which plaintiffs' parents furnished. Defendant was not named as a seller and did *not*

---

[1] The other parties are not involved in this appeal.

disclose to plaintiffs or any other member of the venture that he would participate in a $300,000 profit. The parties dispute whether defendant was a member of the joint venture when the venture purchased the mall. We will assume that he was. After the purchase, defendant remained a venturer and also represented the venture as managing agent of the mall until November 16, 1982.

Plaintiffs, defendant and others were engaged together in several joint ventures. On November 16, 1982, they executed an agreement which provided that defendant sell to plaintiffs all of his interest in the Sellwood Harbor, Tualatin Property and Lindgren-Hillsboro Mall joint ventures. The release, which was attached to the agreement and incorporated in it by reference, provided, in part:

"2. For and in consideration of Berg's, Crosswhite's and Rumpakis' release [of plaintiffs] in paragraph 1 hereof, [*plaintiffs*] and Global do hereby release, acquit and forever discharge *Berg,* Crosswhite, and Rumpakis, their heirs, representatives, successors, assigns, partners, officers, agents, employees, employers or insurers *from any and all actions, causes of action, claims, damages or demands for damages,* expenses, attorneys' fees and fees or compensation which Lindgren and Global, individually or collectively, ever had or now has or later may have *arising out of or in any way related to* said Sellwood Harbor, Tualatin Property, and *Hillsboro Mall Joint Ventures* and Global, violation of any federal, state or other securities law, *fraud, nondisclosure, misrepresentation, [plaintiffs']* or Global's *participation in any partnership with Berg, Crosswhite and Rumpakis in their capacity as managing joint venturer of any partnership, [plaintiffs']* or Global's *relationship to Berg,* Crosswhite or Rumpakis in their capacity as shareholders, officers or directors of Global, or [plaintiffs'] or Global's relationship to Berg, Crosswhite or Rumpakis *in any capacity whatsoever.*

"* * * * *

"5. In the event action or any other proceeding is instituted to enforce any of the terms of this Agreement, *the prevailing party* shall be entitled to recover from the other party such sum as the court may adjudge reasonable as attorneys' fees at trial or on appeal of such action or proceeding, in addition to all other sums provided by law.

"6. *All parties acknowledge that they have received independent legal advice with regard to their rights or asserted*

*rights arising out of the matters in controversy among the parties hereto, and also with regard to the advisability of making and executing this Agreement.* All parties further acknowledge that they have not relied upon any statement or representation, oral or written, made by any other party as to the facts involved in this controversy or as to any of the rights of the parties to this Agreement.

"7. All parties hereby expressly assume the risk of any mistake of fact and of any facts proven to be other than or different from the facts now known to any of the parties to this Agreement or believed by them to exist. It is the expressed intent of the parties to this Agreement to settle and adjust, finally and forever, without regard to who may or may not be correct in any understanding of the fact or law relating thereto, this controversy." (Emphasis supplied.)

Subsequently, plaintiffs learned that defendant had made a secret profit, and they filed this action.

Defendant asserts that, because of the release, the court should have granted his motion for a directed verdict on all of plaintiffs' claims. He argues that the release is an unambiguous, integrated agreement that releases him from any claims based on fraud, non-disclosure or misrepresentations stemming from any relationship whatever between him and plaintiffs arising out of or in any way related to the mall. He asks that we reverse the order that granted a new trial on the entire case and remand the case for entry of judgment in his favor on plaintiffs' claims and in their favor on his counterclaims.

Plaintiffs respond that the release does not bar their claims for breach of fiduciary duty and fraud which arise out of defendant's failure to disclose his involvement in the earlier purchase and sale of the mall. They assert that the release does not cover their claims, because it is limited to matters within the contemplation of the parties when they signed it. They also assert that there was sufficient evidence for the jury to decide that defendant fraudulently procured the release, because he intentionally concealed and did not disclose his secret profit in violation of his duty as a co-venturer and an agent of the venture in the purchase and management of the mall. Accordingly, they assert that the court did not err in denying defendant's motion for a directed verdict, and that they are entitled to a new trial on all of their claims and, as

defendant concedes, to directed verdicts against defendant on his counterclaims and to attorney fees for prevailing on those claims.

■ The court erred when it denied defendant's motion for a directed verdict on each of plaintiffs' claims. The court stated that it did not "think there was any real question about the validity of the release," but that it did not believe that the release covered the claims. Clearly, it does. It covers all

"actions, causes of action, claims * * * which [plaintiffs] ever had or now [have] or later may have arising out of or in any way related to * * * Hillsboro Mall Joint Venture, * * * fraud, nondisclosure, misrepresentation, [plaintiffs'] participation in any partnership with [defendant] * * * [plaintiffs'] relationship to [defendant] * * * in [his] capacity as managing joint venturer of any partnership * * * or [plaintiffs'] relationship to [defendant] in any capacity whatsoever."

It is broad enough. *See Kabil Developments Corp. v. Mignot,* 279 Or 151, 156, 566 P2d 505 (1977); *Real Estate Loan Fund v. Hevner,* 76 Or App 349, 354, 709 P2d 727 (1985). As a matter of law, the release bars plaintiffs' claims, unless the evidence created an issue of fact as to whether defendant procured the release by fraud or misrepresentation. It does not.

Plaintiffs' claim of fraud is that defendant intentionally concealed and did not disclose his secret profit and that they relied on that failure to disclose to their damage. Even assuming that the evidence presents a fact question as to the other elements of fraud, the release shows, as a matter of law, that plaintiffs did not rely on defendant's concealment and nondisclosure when they signed it. It covers claims for "fraud, nondisclosure [and] misrepresentation" that are "in any way related to * * * Hillsboro Mall Joint [Venture]." It also provides that "all parties acknowledge that they have received independent legal advice" and

"expressly assume the risk of any mistake of fact and of any facts proven to be other than or different from the facts now known to any of the parties to this Agreement or believed by them to exist."

As a matter of law, when plaintiffs executed the release, they could not have relied on defendant to disclose the existence of possible claims for fraud, nondisclosure or misrepresentation,

because it expressly released him from liability for nondisclosure. Furthermore, there is no evidence of any other possible fraud, nondisclosure or misrepresentation by defendant which induced plaintiffs to execute the release. *Compare Hansen. v. Oregon Humane Society,* 142 Or 104, 18 P2d 1036 (1933); *Wood v. Young,* 127 Or 235, 271 P 734 (1928). The court erred when it denied defendant's motion for a directed verdict against plaintiffs' claims.

■ Because defendant concedes that plaintiffs are entitled to judgment on defendant's counterclaims, it is not necessary to detail or dispose of the other issues in this case, save one: whether plaintiffs are entitled to attorney fees for prevailing on defendant's counterclaim for attorney fees based on paragraph 5 of the release. They are not. Because they are not the party in whose favor final judgment will be entered, they are not the "prevailing parties." *Zidell v. Greenway Landing Development Co.,* 89 Or App 525, 749 P2d 1210 (1988); *see also Carlson v. Blumenstein,* 293 Or 494, 499, 500 n 3, 651 P2d 710 (1982).

Order granting new trial reversed; remanded with instructions to enter judgment for defendant Berg on plaintiffs Lindgrens' claims and for plaintiffs on defendant's counterclaims.