Argued and submitted December 6, 1988, affirmed May 2, 1989

## LINDGREN et al,
*Petitioners on Review,*

*v.*

## BERG,
*Respondent on Review.*

(TC A8308-05244; CA A36918; SC S35015)

772 P2d 1336

Susan R. Swanson, Portland, argued the cause for petitioners on review. With her on the petition was Hampson, Bayless, Murphy & Stiner, Portland.

Rex Armstrong, Portland, argued the cause for respondent on review. With him on the response was Bogle & Gates, Portland.

Before Peterson, Chief Justice, and Linde, Carson, Jones, Gillette, and Van Hoomissen, Justices.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue is whether a release signed by plaintiffs bars them from litigating whether the release itself was induced by defendant Berg's fraud.[1] The trial court found that although the release was valid, it did not bar plaintiffs' claims. The Court of Appeals reversed, holding that the release bars plaintiffs' claims and that the trial court erred in denying Berg's motion for a directed verdict. *Lindgren v. Berg,* 89 Or App 514, 749 P2d 1212 (1988). We review the Court of Appeals decision for errors of law, *Brown v. J. C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984), and affirm.

Berg negotiated two transactions involving the Hillsboro Mall (Mall). First, Berg and defendant Sundholm agreed to purchase the Mall for $2,000,000, with a $325,000 down payment. They then sold the Mall for $2,300,000, with a $625,000 down payment, to the Lindgren-Hillsboro Mall Joint Venture (LHV), which included plaintiffs, defendant Berg, one Rumpakis, and one Crosswhite. Berg did not tell plaintiffs that he would participate in a secret profit. His name did not appear on LHV's purchase contract. Berg used $325,000 of the $625,000 received from LHV to make the down payment on his and Sundholm's purchase, and he and Sundholm kept the balance of LHV's down payment.

In addition to being venturers in LHV, plaintiffs and Berg were partners in several other commercial investments.[2] For purposes of Berg's directed verdict motion, the Court of Appeals assumed, as plaintiffs contended, that Berg was a LHV venturer when he negotiated LHV's Mall purchase.

Friction developed among the LHV venturers. To resolve the controversy, they agreed that plaintiffs would buy the other venturers' interests in LHV and their other investments. Plaintiffs agreed to pay about $288,000 to Berg, Crosswhite, and Rumpakis. Each of the parties received independent legal advice. Their lawyers participated in negotiating and drafting an agreement and release which each of the

---

[1] Berg is the only party-defendant to this appeal.

[2] During oral argument in this court, Berg's lawyer stated that the parties were involved in investments amounting to some $6 million.

parties signed. The release, which was attached to the agreement and incorporated in it by reference, provides in part:

"1. For and in consideration of Lindgren's and Global's[3] release in paragraph 2 hereof and Lindgren's and Global's indemnification agreement in paragraph 3 hereof, [defendants] do hereby release, acquit and forever discharge Lindgren * * * and Global [on terms substantially identical to paragraph 2].

"2. For and in consideration of Berg's, Crosswhite's and Rumpakis' release in paragraph 1 hereof, Lindgren and Global do hereby release, acquit and forever discharge Berg, Crosswhite, and Rumpakis, their heirs, representatives, successors, assigns, partners, officers, agents, employees, employers or insurers from any and all actions, causes of action, claims, damages or demands for damages, expenses, attorneys' fees and fees or compensation which Lindgren and Global, individually or collectively, *ever had or now has or later may have arising out of or in any way related to* said Sellwood Harbor, Tualatin Property, and *Hillsboro Mall Joint Ventures* and Global, violation of any federal, state or other securities law, *fraud, nondisclosure, misrepresentation,* Lindgren's or Global's participation in any partnership with Berg, Crosswhite or Rumpakis * * * *in their capacity as managing joint venturer* of any partnership, Lindgren's or Global's relationship to Berg, Crosswhite or Rumpakis in their capacity as shareholders, officers or directors of Global, or *Lindgren's* or Global's *relationship to Berg,* Crosswhite or Rumpakis *in any capacity whatsoever.*

"* * * * *

"5. In the event action or any other proceeding is instituted to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover from the other party such sum as the court may adjudge reasonable as attorneys' fees at trial or on appeal of such action or proceeding, in addition to all other sums provided by law.

"6. *All parties acknowledge that they have received independent legal advice with regard to their rights or asserted rights arising out of the matters in controversy among the parties hereto, and also with regard to the*

---

[3] Berg and plaintiff Paul Lindgren were directors of a corporation formerly known as Global Manufacturing, Inc. At the time plaintiffs signed the release, Berg, Lindgren, Global and others were defendants in a lawsuit pending in Multnomah County Circuit Court.

*advisability of making and executing this Agreement.* All parties further acknowledge that they have not relied upon any statement or representation, oral or written, made by any other party as to the facts involved in this controversy or as to any of the rights of the parties to this Agreement.

"7. All parties hereby expressly *assume the risk* of any mistake of fact and *of any facts proven to be other than or different from the facts now known to any of the parties* to this Agreement or believed by them to exist. It is the expressed intent of the parties to this Agreement to settle and adjust, finally and forever, *without regard to who may or may not be correct in any understanding of the fact or law relating thereto, this controversy.*" (Emphasis added.)

Plaintiffs later learned of Berg and Sundholm's secret profit and brought this action claiming fraud and breach of fiduciary duty as a joint venturer and as an agent. Berg asserted several counterclaims arising out of the parties' various investments, including a claim for attorney fees for breach of the release.

At trial, Berg moved for a directed verdict on all plaintiffs' claims. The trial court allowed Berg's motion only on plaintiffs' claim for breach of fiduciary duty as LHV's agent, finding that although the release was valid, it did not bar plaintiffs' other claims. The jury returned a verdict for Berg on plaintiffs' fraud claim and a verdict for plaintiffs for $1 general and $1 punitive damages on their breach of fiduciary duty claim. It returned a verdict for Berg on his counterclaims, awarding $2 general and $5,000 punitive damages and attorney fees to be determined by the court.[4] The court entered judgment accordingly, but it awarded $52,000 in attorney fees to plaintiffs on the grounds that the jury's attorney fee verdict for Berg was inconsistent with its verdict for plaintiffs on their breach of fiduciary duty claim.

Thereafter, the court granted plaintiffs' motion for a new trial on the grounds that it had erred in granting Berg's motion for a directed verdict on plaintiffs' breach of fiduciary duty as an agent claim and in instructing the jury. The court granted Berg's motion for a new trial on the ground that the issues in plaintiffs' case were interrelated to Berg's counterclaims. Both sides appealed.

---

[4] In the Court of Appeals, Berg conceded that plaintiffs are entitled to judgment on his counterclaims. *Lindgren v. Berg,* 89 Or App 514, 516, 749 P2d 1212 (1988).

The Court of Appeals reversed, holding that the trial court had erred in denying Berg's motion for a directed verdict on all plaintiffs' claims:

"As a matter of law, the release bars plaintiffs' claims, unless the evidence created an issue of fact as to whether defendant procured the release by fraud or misrepresentation. It does not.

"Plaintiffs' claim of fraud is that defendant intentionally concealed and did not disclose his secret profit and that they relied on that failure to disclose to their damage. Even assuming that the evidence presents a fact question as to the other elements of fraud, the release shows, as a matter of law, that plaintiffs did not rely on defendant's concealment and nondisclosure when they signed it. It covers claims for 'fraud, nondisclosure [and] misrepresentation' that are 'in any way related to * * * Hillsboro Mall Joint [Venture].' It also provides that 'all parties acknowledge that they have received independent legal advice' and

" 'expressly assume the risk of any mistake of fact and of any facts proven to be other than or different from the facts now known to any of the parties to this Agreement or believed by them to exist.'

"As a matter of law, when plaintiffs executed the release, they could not have relied on defendant to disclose the existence of possible claims for fraud, nondisclosure or misrepresentation, because it expressly released him from liability for nondisclosure." 89 Or App at 519-20.

The Court of Appeals also found that there was no evidence in the record of any other possible fraud, nondisclosure, or misrepresentation by Berg to induce plaintiffs to execute the release. 89 Or App at 520. We allowed review to consider whether the release plaintiffs signed bars them from litigating whether the release itself was induced by Berg's fraud. We hold that it does.

Plaintiffs contend that Berg acted as a LHV joint venturer or an an agent for LHV in the purchase of the Mall and, therefore, had a fiduciary duty to disclose to LHV his secret profit. They argue that his nondisclosure was fraud which induced them to sign the release. For purposes of deciding whether Berg was entitled to a directed verdict, we must resolve all factual issues in plaintiffs' favor.

The release plaintiffs signed provides that the parties

release each other from any claims they "ever had or now has or later may have arising out of or in any way related to * * * Hillsboro Mall Joint Ventures * * * [for] fraud, nondisclosure, [or] misrepresentation * * * in any capacity whatsoever." If that language means anything, it means that the parties acknowledge that there could be claims for fraud, non-disclosure, or misrepresentation of which the parties might be unaware and that any such claims were to be covered by the release. Berg argues that this specific language within the broadly worded release establishes that plaintiffs could not have reasonably relied on his nondisclosure in releasing him.

A release is a contract in which one or more parties agrees to abandon a claim or right. *See Glickman v. Weston,* 140 Or 117, 123, 11 P2d 281, 12 P2d 1005 (1932). Certainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts. Parties to a contract, particularly parties who, as here, are represented by lawyers in negotiating and drafting the contract, should be allowed to allocate the actual risks of the contract as they see fit. The likelihood of a misunderstanding between parties is greatly reduced where each party is represented by a lawyer.

Applying the law to the facts in this case, the record shows that each of the parties received independent legal advice with regard to their rights and to the advisability of entering into the settlement agreement and release. Their lawyers participated in negotiating and drafting the agreement and release. The parties agreed to terminate their extensive business relationships by plaintiffs' purchase of the other venturers' interests. They acknowledged that their releases would "finally and forever" resolve the controversy between them. The record shows that Paul Lindgren and Berg were involved in other litigation at the time this release was executed. The agreement and release, which are clear and unambiguous on their face, record the terms of exchange as negotiated by the parties.[5] The broadly worded release

---

[5] Plaintiffs rely on testimony of Paul Lindgren that they understood the language about "fraud, nondisclosure [or] misrepresentation" was included in the release due to concerns of possible third party claims against the joint ventures. The record does not support an inference that Berg represented to plaintiffs that the release was restricted to third party claims. In interpreting a contract, Oregon courts look to the parties' objective manifestations rather than to their secret intentions or understandings. *Kabil Developments Corp. v. Mignot,* 279 Or 151, 156-57, 566 P2d 505 (1977).

expressly encompasses claims arising from "fraud, non-disclosure, [or] misrepresentation," *all* transactions related to the Mall, and *all* relationships between plaintiffs and Berg.

By its plain language, the release contemplates that a party might have a claim, including an unknown claim, against another party for "fraud, nondisclosure, [or] misrepresentation." Plaintiffs' argument that they had a right to rely on Berg to disclose his secret profit before they could release him from all claims for "nondisclosure" is self-contradictory. Plaintiffs claim, in effect, that although they signed a release in which they expressly released Berg from all claims involving nondisclosure, the release was voidable if Berg had, in fact, failed to disclose something to them. The release precludes the result plaintiffs seek.

It covers claims of which plaintiffs might not have been aware, even claims for undisclosed fraud. The active participation of plaintiffs' lawyer in negotiating and drafting the agreement and release and reviewing them with plaintiffs before plaintiffs signed them, undercuts plaintiffs' argument that Berg fraudulently induced the release. We decline to hold, as plaintiffs urge, that a party who is represented by a lawyer in a commercial transaction may *never* release another party from claims for undisclosed fraud.

We hold that the release plaintiffs signed bars them from litigating whether the release itself was induced by Berg's fraud. We agree with the Court of Appeals that the trial court erred in denying Berg's motion for a directed verdict on all of plaintiffs' claims.

The decision of the Court of Appeals is affirmed.