Argued and submitted October 23, 1992; resubmitted In Banc March 10, reversed
and remanded May 19, reconsideration denied July 21, petition for review allowed
August 24, 1993 (317 Or 485)

Ward W. RISTAU,
*Appellant,*

*v.*

WESCOLD, INC.,
an Oregon corporation;
and Theodore E. Youngren,
*Respondents.*

(9104-02042; CA A73177)

852 P2d 271

David B. Markowitz, Portland, argued the cause for appellant. With him on the briefs were Lynn R. Stafford, Robert D. Bulkley and Markowitz, Herbold, Glade & Mehlhaf, PC, Portland.

Don G. Carter, Portland, argued the cause for respondents. With him on the brief were Donald W. McEwen and McEwen, Gisvold, Rankin & Stewart, Portland.

WARREN, J.

Edmonds, J., dissenting.

## WARREN, J.

Plaintiff appeals a summary judgment for defendants. He argues that the court erred when it concluded that a release provision in a stock sales agreement precludes him from bringing a claim against defendants. We reverse.

The court shall grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47C. We view the record in the light most favorable to the party opposing the motion. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 580 P2d 1014 (1978).

In 1974, plaintiff and defendant Youngren each owned one-half of the stock in Western Engineers, Inc. (Western). They were also the officers and directors of the corporation. Disputes between plaintiff and Youngren led to an agreement in 1988 in which plaintiff agreed to sell his stock to Youngren. The transaction included promissory notes for the purchase price and a separate noncompete agreement supported by separately stated consideration. In addition, the parties executed a release, which provides:

> "Effective as of the date hereof, [plaintiff] and Youngren hereby mutually release each other from any and all claims, demands, rights, damages, expenses, loss of compensation, suits and causes of action, whether known or unknown, now existing."

Both parties were represented by counsel and plaintiff's counsel drafted the release. After the sale, Western merged into defendant Wescold.

In 1991, plaintiff filed this action for violation of security laws, seeking rescission of the stock sale agreement or damages. Defendant moved for summary judgment on the basis of the release and, in the alternative, on the basis that plaintiff, by his conduct, had affirmed the contract. The trial court granted the motion on the basis of the release.

Plaintiff's claim is for securities fraud arising from defendants' purported misrepresentations and failure to disclose certain information material to the stock sale agreement. He alleges, and provides supporting evidence, that the release of claims was a part of the same transaction. He

further alleges, and supports with evidence, that he would not have entered into the sale agreement, or would have demanded a higher price for his shares, had he known the truth.

Defendants argue that the release agreement is unambiguous and precludes plaintiff's claim. In the alternative, they argue that, even if the release is ambiguous, the uncontradicted evidence is that it was intended to settle *all* disputes between the parties, including any claim for fraud in the inducement of the agreement. Plaintiff argues that the release was intended only to bar the parties from bringing claims arising out of transactions that occurred *before* the sales agreement was negotiated, not to bar claims for fraud in the inducement of the stock sales agreement itself.

■ ■ The issue is whether the language of the release agreement precludes plaintiff's claim that the stock sale agreement and the release were induced by fraud. When there is a misrepresentation regarding a material term of the contract, a party is entitled to rescind the agreement. As a general proposition, an agreement that releases claims can be rescinded for the same reasons as any other agreement, including fraud in the inducement. *See Wheeler v. White Rock Bottling Co.*, 229 Or 360, 364, 366 P2d 527 (1961); *Larson v. Hansen et al*, 223 Or 533, 534, 355 P2d 234 (1960); *Kim v. Allstate Ins. Co.*, 102 Or App 529, 795 P2d 582, *rev den* 310 Or 475 (1990). However, a release agreement may *explicitly* provide that it releases even claims of fraud in the inducement. In that case, there can be no rescission of the release because of misrepresentations or nondisclosures that induce it. *Lindgren v. Berg*, 307 Or 659, 772 P2d 1336 (1989).

■ Here, the release is general; it provides that it releases each party "from any and all claims, demands, rights, damages, expenses, loss of compensation, suits and causes of action, whether known or unknown, now existing." Unlike in *Lindgren*, that language does not *explicitly* allocate the risk of misrepresentation or nondisclosure in inducing the agreement. In the absence of explicit language, plaintiff is entitled to seek rescission, and the trial court should not have granted summary judgment to defendants on the basis of the release.

Defendants argue that the trial court's ruling can be affirmed on the basis of their alternative ground asserted for summary judgment: that plaintiff elected to affirm the contract and cannot now seek to rescind it.

"[O]ne who accepts benefits under a contract and acts inconsistently with an intent to rescind it may thereby waive the right to rescind." *Kladouchos v. Ballis*, 94 Or App 403, 405, 765 P2d 831 (1988); *see State Farm Fire v. Sevier*, 272 Or 278, 537 P2d 88 (1975). A defrauded party seeking to rescind must act promptly and "cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable * * * to affirm or disaffirm it." *Schuler et ux. v. Humphrey et ux.*, 198 Or 458, 480, 257 P2d 865 (1953). Waiver is a matter of intent and each case is decided on its own facts and circumstances. 198 Or at 480.

Here, there is no evidence showing when plaintiff learned of the alleged misrepresentation. At best, we can infer that he knew of it when he filed his complaint. The complaint includes a tender of the full contract price in the claim for rescission. That offer is consistent with an intent to rescind. There is no evidence on the summary judgment record that plaintiff failed to act promptly after learning of the alleged fraud and before he filed his complaint.

Defendant, however, argues that plaintiff's continued receipt of payments on the note and noncompete agreement after he filed his complaint, show his intent to affirm rather than disaffirm the contract. We disagree. There is no evidence that defendant accepted plaintiff's offer to return the sale price and, under the circumstances, we cannot say that continued acceptance of payments on the purchase price, which plaintiff has offered to return, is conduct necessarily inconsistent with an intent to rescind. The tender offer remained outstanding, and plaintiff's receipt of payments after defendant failed to accept that tender did not necessarily constitute a waiver of the right to rescind.

Defendants also argue that plaintiff's continued acceptance of payments under the noncompete agreement is inconsistent with rescission. Plaintiff does not seek to rescind the noncompete agreement; what he seeks is rescission of the stock sale agreement pursuant to ORS 59.127(2). The two

agreements were contemporaneous; however, each was supported by separate consideration. Depending on the intent of the parties, the agreements may or may not be severable. Their intent is not evident on this record. We conclude that there are questions of fact that preclude summary judgment for defendant on that alternative basis.

Reversed and remanded.

**EDMONDS, J.,** dissenting.

In this case, plaintiff's attorney suggested and drafted the language of a release which the majority holds does not preclude a claim for fraud in the inducement. As a result, it allows plaintiff to escape the consequences of the plain meaning of the release and sue on a claim that he has released. Also, the majority seeks to distinguish the release in this case from the release agreement in *Lindgren v. Berg*, 307 Or 659, 772 P2d 1336 (1989), as the basis for its holding that it was error to grant summary judgment to defendants. It says:

> "Unlike in *Lindgren*, [the] language [of the release] does not *explicitly* allocate the risk of misrepresentation or non-disclosure in inducing the agreement. In the absence of explicit language, plaintiff is entitled to seek rescission * * *." 120 Or App at 267. (Emphasis in original.)

The majority is wrong on all counts. The release in this case explicitly refers to "any and all claims * * * whether known or unknown, now existing" as of the date of the agreement. Summary judgment is inappropriate on the record in this case, only if the claim of fraud in the inducement is not covered by the terms of the release. Necessarily, for plaintiff to prevail, the agreement would have to be ambiguous or expressly preserve the right to sue for fraud in the inducement. Whether an agreement is ambiguous depends on whether it is capable of more than one interpretation. *Oakridge Cablevision v. First Interstate Bank*, 65 Or App 640, 673 P2d 532 (1983). This agreement released "any and all claims." There is nothing ambiguous about that language and it encompasses a claim of fraud by its terms. Because the release is capable of only one meaning and the uncontradicted evidence shows that the alleged misrepresentations were made before the release was executed, plaintiff's

claims in this litigation are barred by a mutually bargained-for release, and defendants are entitled to summary judgment.

Moreover, the majority's holding is inconsistent with our and the Supreme Court's holding in *Lindgren*. In that case, like this case, the parties were involved in joint business transactions and executed an agreement for one party to sell his interest in certain projects to the other. As part of the stock sale agreement, the parties executed a release agreement that provided, in part:

> "[Plaintiffs] do hereby release * * * [defendants] * * * from any and all actions, causes of action, claims, damages or demands for damages, * * * which [plaintiffs] *ever had or now has or later may have arising out of or in any way related to* [various transactions] * * *, violation of any federal, state or other securities law, *fraud, nondisclosure, misrepresentation*, [plaintiffs] or Global's participation in any partnership with [defendants] *in their capacity as managing joint venturer* of any partnership [plaintiff's] or Global's relationship to [defendants] in their capacity as shareholders, officers or directors of Global, or [plaintiff's] or Global's relationship to Berg or Crosswhite or Rumpakis in any capacity whatsoever." 307 Or App at 659. (Emphasis in original.)

The defendant assigned as error the denial of its motion for a directed verdict on the basis of the release. We reversed. 89 Or App 514, 749 P2d 1212 (1988). On review, the Supreme Court affirmed. It said:

> "Parties to a contract, particularly parties who, as here, are represented by lawyers in negotiating and drafting the contract, should be allowed to allocate the actual risks of the contract as they see fit. The likelihood of a misunderstanding between parties is greatly reduced where each party is represented by a lawyer.
>
> "Applying the law to the facts in this case, the record shows that each of the parties received independent legal advice with regard to their rights and to the advisability of entering into the settlement agreement and release. Their lawyers participated in negotiating and drafting the agreement and release. * * * The agreement and release, which are clear and unambiguous on their face, record the terms of exchange as negotiated by the parties. The broadly worded release expressly encompasses claims arising from 'fraud, non-disclosure, [or] misrepresentations,' *all* transactions

related to the Mall, and *all* relationships between plaintiffs and Berg.

"\* \* \* \* \*

"[The release] covers claims of which plaintiffs might not have been aware, even claims for undisclosed fraud. The active participation of plaintiffs' lawyer in negotiating and drafting the agreement and release and reviewing them with plaintiffs before plaintiffs signed them, undercuts plaintiffs' argument that Berg fraudulently induced the release. We decline to hold, as plaintiffs urge, that a party who is represented by a lawyer in a commercial transaction may never release another party from claims for undisclosed fraud.

"We hold that the release plaintiffs signed bars them from litigating whether the release itself was induced by Berg's fraud." 307 Or at 665. (Emphasis in original; footnote omitted.)

In the light of the holding in *Lindgren* and the express language of the release written by plaintiff's lawyer, the majority's assertion that plaintiff is entitled to seek rescission because the release agreement does not "explicitly allocate the risk of misrepresentation or nondisclosure in inducing the agreement" is not supported by the facts or the law. The express language of the agreement precludes the majority's conclusion. The release of "ALL" claims means "ALL."

Also, the majority holds that plaintiff's receipt of payments under the non-compete agreement, which was part of the bargain of the parties in their effort to disentangle their business affairs, is not a waiver of the right to rescind the stock sale agreement. The majority circumvents the proposition of law that an agreement cannot be rescinded in part[1] unless part of the agreement is divisible and supported by independent consideration. It holds that, "[d]epending on the intent of the parties, the agreement may or may not be severable." 120 Or App at 269. The uncontroverted evidence in the summary judgment record is that contemporaneously with the stock sale agreement, the non-compete agreement was executed as "part of the same transaction." In his affidavit, plaintiff takes the unequivocal position that the non-

---

[1] *See Pickinpaugh v. Morton*, 268 Or 9, 18, 519 P2d 91 (1974).

compete agreement is binding and enforceable.[2] Based on that evidence, plaintiff cannot maintain an action that seeks rescission of only part of the transaction as a matter of law.

I dissent.

Richardson, C. J., and Riggs, J., join in this dissenting opinion.

---

[2] In his affidavit in response to defendants' motion for summary judgment, plaintiff says, "I have received and continue to receive periodic payments under the agreements. * * * I cannot engage in work as a competitor because I am bound by the terms of the non-competition agreement."