Argued and submitted November 3, 1993, decision of the Court of Appeals reversed and judgment of the circuit court affirmed March 10, 1994

Ward W. RISTAU,
*Respondent on Review,*

*v.*

WESCOLD, INC.,
an Oregon corporation;
and Theodore E. Youngren,
*Petitioners on Review.*

(CC 9104-02042; CA A73177; SC S40351)

868 P2d 1331

Don G. Carter, of McEwen, Gisvold, Rankin & Stewart, Portland, argued the cause and filed the petition for petitioners on review.

Robert D. Bulkley, Jr., of Markowitz, Herbold, Glade & Mehlhaf, P.C., Portland, argued the cause for respondent on review. With him on the response to the petition were David B. Markowitz and Lynn R. Stafford.

Before Carson, Chief Justice, and Peterson,** Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

CARSON, C. J.

---

** Peterson, J., retired December 31, 1993.

## CARSON, C. J.

The issue in this case is whether an agreement purporting to release "any and all claims, * * * whether known or unknown, now existing," precludes a claim of statutory fraud in the inducement of a contemporaneously executed stock sale agreement. The trial court held that the release agreement barred the claim and granted summary judgment in favor of defendants. The Court of Appeals, in an *in banc* decision, reversed, holding that the trial court erred in granting summary judgment.[1] We reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

From about 1974 until 1988, plaintiff and defendant Youngren each owned 50 percent of the stock of Western Engineers, Inc. (Western). Plaintiff and defendant Youngren also served as the officers and directors of Western. In an agreement dated October 31, 1988, but signed a few days later, plaintiff, defendant Youngren, and their wives executed a stock sale agreement whereby plaintiff sold all his stock in Western to defendant Youngren. There were a number of other agreements executed simultaneously.

Just prior to closing the transaction, plaintiff suggested that the parties execute a mutual release agreement. Plaintiff's lawyer drafted the release agreement, and it was executed at the same time as the other agreements.

The release provided, in part:

"Effective as of the date hereof, [plaintiff] Ristau and [defendant] Youngren hereby mutually release each other from any and all claims, demands, rights, damages, expenses, loss of compensation, suits and causes of action, whether known or unknown, now existing.

"The parties do not by this document release each other from any of the following obligations:

"The obligations of the parties under the following agreements, all of which are effective substantially contemporaneously herewith, and all of the agreements and

---

[1] The Court of Appeals also rejected defendants' alternative ground for summary judgment, that plaintiff subsequently had affirmed the stock sale agreement. *Ristau v. Wescold, Inc.*, 120 Or App 264, 268, 852 P2d 271 (1993). We do not reach that issue here.

obligations envisioned under such agreements, including, but not limited to, the following:

"A.  Agreement to Purchase and Sell Western Engineers, Inc. Stock.

"B.  Noncompetition Agreement.

"C.  $350,000 Promissory Note.

"D.  Joint Ownership Agreement Youngren/Ristau.

"E.  Security Agreement and Trust Deeds in favor of Ristau, securing obligations due to Ristau.

"F.  Option Agreement.

"G.  Guaranty Agreement.

"H.  Washington and Oregon Trust Deeds.

"I.  Pledge Agreement.

"J.  Agreement to Pledge Life Insurance.

"K.  Obligations due to Ristau as a co-lessor of real property.

"L.  Other obligations due to Ristau which are shown as liabilities on the books and records of Western Engineers, Inc., W.E. Stone & Co., Inc. or Industrial Refrigeration & Equipment Co., Inc."

In November 1989, Western, W.E. Stone & Co., Inc., and Industrial Refrigeration & Equipment Co., Inc., merged into defendant Wescold, Inc. Defendant Youngren is the president and sole shareholder of Wescold, Inc.

In April 1991, plaintiff filed this action, pursuant to ORS 59.127(1)(b),[2] seeking either rescission of the 1988 stock

---

[2] ORS 59.127(1) provides, in part:

"A person who purchases a security [defendant] is liable to * * * the person selling the security [plaintiff], if the person:

"* * * * *

"(b) Purchases a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (the seller not knowing of the untruth or omission), and if the person does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."

Plaintiff claimed that defendant Youngren induced him to enter into the stock sale agreement "by means of untrue statements of material fact and failure to disclose material facts."

sale agreement or damages.[3] In December 1991, the trial court granted defendants' motion for summary judgment on the ground that the release agreement barred plaintiff's claim. The trial court did not reach defendants' second ground for summary judgment. The Court of Appeals reversed.

Summary judgment properly is granted when "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." ORCP 47 C. As this court often has stated, in deciding whether to grant a motion for summary judgment, the court "must draw all inferences of fact from the depositions and affidavits against the moving party and in favor of the party opposing the motion." *Uihlein v. Albertson's, Inc.*, 282 Or 631, 634, 580 P2d 1014 (1978).

■■ We are presented with a question of contract interpretation. A release agreement is a contract subject to the rules of contract construction and interpretation. *See Lindgren v. Berg*, 307 Or 659, 665, 772 P2d 1336 (1989) ("A release is a contract in which one or more parties agrees to abandon a claim or right."). If the terms of a contract are unambiguous, "the construction of [the] contract is a question for the court and is treated as a matter of law." *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971). This court recently has summarized its method of contract interpretation:

> "Unambiguous contracts must be enforced according to their terms. Whether the terms of a contract are ambiguous in the first instance is a question of law. If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties." *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991). (Citations omitted.)

■ In this case, the terms of the release agreement are unambiguous. Thus, we will enforce the release agreement according to its terms.

---

[3] Plaintiff also asserted claims of fraud, negligent misrepresentation, and breach of fiduciary duty. The trial court granted defendants' application for an order of abatement on the ground that those claims were subject to a mandatory arbitration provision contained in the stock sale agreement. Plaintiff did not appeal that order.

The release agreement bars "any and all claims, demands, rights, damages, expenses, loss of compensation, suits and causes of action, whether known or unknown, now existing." The release agreement further acknowledges that all the other agreements, including the stock sale agreement, were "effective substantially contemporaneously" with the release agreement. Thus, plaintiff's claim under ORS 59.127, which accrued at the time of the "purchase," arose at the same time as the execution of the release agreement. Because the release agreement and the stock sale agreement came into effect contemporaneously, the claim under ORS 59.127 was "now existing" at the time that the release agreement was executed.

Even if the foregoing were not enough to establish that the release agreement unambiguously released this claim, the release agreement also explicitly listed the claims that the release *did not* cover.[4] The release agreement specifically excluded from release the *obligations* of the parties arising under the other agreements, that is, claims that would arise if the parties did not fulfill the obligations *created by the other specified agreements*. The use of the term "obligation" rather than the term "claim" establishes that the parties intended to exclude from release *later* claims that might occur under the agreements. By including the exclusion in the release, the parties were looking forward to claims that might develop out of the failure to perform the obligations created or envisioned by the agreements. The release agreement applied to all claims that existed at the moment the release agreement was executed; the exclusion applied to claims that arose under the listed agreements after the execution of the release agreement. Because plaintiff's claim under ORS 59.127 existed at the moment the release was executed, it was covered by the release.

Plaintiff argues to the contrary that the general release agreement executed at the time of the stock sale agreement should not bar his claim under ORS 59.127, because "a release of claims arising from the transaction

---

[4] This court has held that a release agreement "must be construed by its contents as a whole in order to give it the construction the parties intended." *Glickman v. Weston*, 140 Or 117, 126-27, 11 P2d 281, 12 P2d 1005 (1932).

itself must be express."[5] Plaintiff relies upon a New Jersey case that held that "[c]laims or demands arising contemporaneously with delivery [of the release] * * * are not discharged unless expressly embraced therein or falling within the fair import of the terms employed." *Bilotti v. Accurate Forming Corp.*, 39 NJ 184, 204, 188 A2d 24 (1963). The New Jersey Supreme Court held that a fraud claim involving a stock sale transaction executed simultaneously with a release agreement could not be "expressly embraced in that instrument" or "within the fair import of the general terms employed" unless "possible fraud in the stock sale was specifically considered at the time the transaction was consummated and the release delivered." *Id.* at 205.

■    Plaintiff argues that this court should adopt the New Jersey rule and hold that, in order for a release to apply to a claim of fraud in the inducement of a contemporaneously executed agreement, the release agreement must mention explicitly fraud in the inducement of that agreement. As discussed above, we agree with plaintiff and the New Jersey Supreme Court insofar as we will enforce an unambiguous release that covers the claim at issue. We decline to hold, however, that even an unambiguous release agreement must include an *explicit* reference to fraud claims arising contemporaneously with the release agreement in order to bar recovery. As this court held in *Glickman v. Weston*, 140 Or 117, 125, 11 P2d 281, 12 P2d 1005 (1932), a general release from all claims and demands is sufficient to bar a specific claim, unless the claim is excepted from the release agreement.[6]

---

[5] The Court of Appeals stated the issue as "whether the language of the release agreement precludes plaintiff's claim that the stock sale agreement and the *release* were induced by fraud." *Ristau v. Wescold, Inc., supra*, 120 Or App at 267. (Emphasis added.) The Court of Appeals then went on to distinguish this case from *Lindgren v. Berg*, 307 Or 659, 772 P2d 1336 (1989), for the reason that the agreement at issue in *Lindgren* explicitly provided that it released claims for fraud in the inducement. 120 Or App at 267. The Court of Appeals concluded that there was no such explicit provision in the general release agreement here and, therefore, that the release agreement did not operate to bar plaintiff's claim. *See ibid.* ("In the absence of explicit language, plaintiff is entitled to seek rescission.").

Before this court, plaintiff conceded that the *release* was not fraudulently induced. Thus, we need not reach that issue decided by the Court of Appeals.

[6] In *Glickman*, this court upheld a general release agreement and declined to find that the parties "intended to leave some things open and unsettled." 140 Or at 122. In answer to the plaintiff's assertion that the general release agreement was too abbreviated and general to cover a specific claim of slander, the court responded:

We hold that the mutual release agreement bars plaintiff's claim that the stock sale agreement fraudulently was induced in violation of ORS 59.127. The Court of Appeals erred in reversing the trial court's order granting summary judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

"[The general release] is easily understood by the laymen, even if it does lack some of the grandiose redundancy of legal phraseology which might add lustre to the erudition of the attorney who prepared it, but is of little value as a means of conveying information to the person for whom it is intended." *Id.* at 127.

That statement applies with equal force here. The release agreement signed by the parties was an attempt to settle "any and all claims" then existing between them. There was no need for the parties to offer a listing of what is included in "any and all."