Argued and submitted May 27, affirmed September 7, petition for review denied
November 1, 1994 (320 Or 325)

Claudia KNUTSON,
*Appellant,*

*v.*

YAMHILL COUNTY,
Yamhill County Department of Public Works,
Lloyd Zentner and John Does I-XX,
*Respondents.*

(CV92-139; CA A80448)

881 P2d 156

Greg Noble argued the cause and filed the briefs for appellant. With him on the opening brief was Olson & Rowell.

Janet M. Schroer argued the cause for respondent Lloyd Zentner. With her on the brief was Hoffman, Hart & Wagner. Lisa Lear and Bullivant, Houser, Bailey, Pendergrass & Hoffman joined in the brief for respondents Yamhill County and Yamhill County Department of Public Works.

No appearance for respondents John Does I-XX.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff appeals from a summary judgment dismissing various claims arising from her employment with defendant Yamhill County. We view the facts in the light most favorable to plaintiff, *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978), and affirm.

Between May, 1988, and March, 1991, plaintiff worked for the Yamhill County Department of Public Works under the supervision of defendant Zentner. Plaintiff alleged that during that time and, as late as January or February, 1991, she was exposed to a pattern of repeated sexual advances and other offensive conduct by Zentner. On March 1, 1991, the Yamhill County Counsel received written notice of the alleged conduct. On March 5, 1991, plaintiff signed a release that provided:

"RELEASE OF CLAIMS; WAIVER OF RIGHT TO SUE

"I, Claudia A. Knutson, hereby release Lloyd Zentner, Yamhill County and its officers, employees and agents from any claim, known or unknown, relating to alleged sexual harassment which may have occurred during my employment with Yamhill County, Oregon through the date of this document. It is my intent to waive any right to sue in court or bring administrative proceedings under federal or state law on any such claims which I have or may acquire."[1]

Later that same day, defendants Yamhill County and Zentner signed a "SEPARATION AGREEMENT AND RELEASE OF CLAIMS" that placed Zentner on paid administrative leave until July 8, 1991, at which time he would take early retirement.

---

[1] The release continued, in part:

"My decision to execute this release is made after discussion with John Bailey, business representative of the Yamhill County Employee's Association, who on March 1, 1991 presented a complaint on my behalf against Lloyd Zentner to the Yamhill County Board of Commissioners through its legal counsel. The complaint alleged sexual harassment of me by Lloyd Zentner. I understand that at the time that I signed this release no formal investigation of my charges had been completed and no determination of the validity of my complaint had been made by the Board of Commissioners.

"I now choose to sign this release to resolve this matter fully. This release is given only because I have been assured by the county that Mr. Zentner will take early retirement."

On or about April 17, 1991, plaintiff's former attorney delivered a letter to defendants that contained the following language:

> "[T]hat a claim is and will be asserted for damages against Yamhill County, its Commissioners as well as the Road Department of Yamhill County and Lloyd Zentner, employee of Yamhill County."[2]

On May 13, 1992, approximately one year later, plaintiff filed a complaint against defendants, alleging claims of battery, intentional infliction of emotional distress, civil rights violations and violation of the Oregon Racketeer Influenced and Corrupt Organization Act. Defendants' answers raised plaintiff's March 5, 1991, release and settlement as an affirmative defense. Defendants moved and plaintiff cross-moved for summary judgment. The trial court granted summary judgment in favor of defendants.

On appeal, plaintiff assigns error to the trial court's granting of defendants' motions for summary judgment. We address only her argument that, under ORS 17.075(3), the settlement and release were inadmissible to support defendants' motion for summary judgment, because plaintiff disavowed them in the April 17, 1991, letter.[3] Defendants respond that the settlement and release were admissible because they were not specifically disavowed by that letter.

---

[2] Neither party submitted a copy of the April 17, 1991, letter to the trial court. The only evidence in the trial court record consisted of an affidavit of plaintiff's attorney in which he alleged:

"On information and belief, plaintiff's former attorney J. David Kryger notified defendants, on or about April 19, 1991, *that a claim is and will be asserted for damages against Yamhill County, its Commissioners as well as the Road Department of Yamhill County and Lloyd Zentner, employee of Yamhill County.*'

"On information and belief, said notice was accomplished by letter dated April 17, 1991, which was delivered by certified mail to Yamhill County Commissioners and Lloyd Zentner on or about April 19, 1991." (Emphasis supplied.)

The affidavit did not include a copy of the letter sent to defendants.

Although plaintiff argues that the "letter specifically alleged that plaintiff had been subjected to sexual harassment by Lloyd Zentner," that information was not contained in any evidence before the trial court. Our review of plaintiff's alleged disavowal is limited to the evidence contained in the affidavit.

[3] We have considered but do not address plaintiff's other arguments.

ORS 17.075(3) provides:

"Any settlement or compromise agreement entered into, any general release of liability or any written or oral state- ment made by any employee after the employee incurs a personal injury, which is not obtained in accordance with ORS 17.085, requiring notice, *may be disavowed by the injured employee within 12 months following the date of the injury* and such statement, release, compromise or settlement shall not be admissible evidence in any court action or administrative proceeding relating to the injury." (Emphasis supplied.)[4]

The term "disavow" is not defined by statute. The parties cite no cases, and we have found none, that have construed the term, or that have discussed what is required to disavow a settlement or release.

The court's task in interpreting a statute is to discern the intent of the legislature. ORS 174.020. The text and context of a statute are the starting point for interpretation. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). In construing the text and context of a statute, words of common usage should be given their plain, natural and ordinary meaning. 317 Or at 611.

*Webster's Third New International Dictionary* 643 (unabridged 1971) defines "disavow" as

"to refuse to own or acknowledge: deny responsibility for, approbation of, or validity of: DISCLAIM, REPUDIATE, DISOWN[.]"

The issue in this case, therefore, is whether plaintiff disclaimed, repudiated or disowned the March 5, 1991, release and settlement.

The only evidence in the record regarding a disavowal consisted of the affidavit stating that on April 17, 1991, plaintiff's former attorney sent a letter to the parties involved in the settlement that included the language, "a claim is and will be asserted for damages." Plaintiff contends that those words are sufficient to disavow the March 5, 1991, settlement and release. We disagree. Releases and settlements are

---

[4] At oral argument, the parties conceded that the exception contained in ORS 17.085 is not applicable in this case.

"favored by the law." *Walcutt v. Inform Graphics, Inc.*, 109 Or App 148, 151, 817 P2d 1353 (1991), *rev den* 312 Or 589 (1992).

■ "Certainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts." *Lindgren v. Berg*, 307 Or 659, 665, 772 P2d 1336 (1989). ORS 17.075(3) provides a mechanism by which one party may unilaterally repudiate and nullify a contractual release, compromise or settlement that was entered into by the parties and that was supported by bargained-for consideration. We hold that, under ORS 17.075, a disavowal must manifest a clear and unequivocal intent to repudiate, disown or disclaim a specific release, compromise, settlement or statement. At the very least, it must inform the defendants what, if anything, is being disavowed.[5]

On the record before us, we cannot conclude that plaintiff disavowed her March 5, 1991, release and settlement. We have only an affidavit containing reference to the partial contents of an April 17, 1991, letter. There is no evidence that that letter referred to the March 5, 1991, release or settlement. Even assuming the April 17, 1991, letter was intended to disavow, it did not identify the thing being disclaimed, repudiated or disowned. It merely asserted that a claim was being pursued. That language could have referred to a claim not covered by the release, or to a new claim that had accrued since the release and settlement. The evidence was, as a matter of law, insufficient that plaintiff disavowed the settlement and release under ORS 17.075(3). The trial court did not err in granting summary judgment in favor of defendants.

Affirmed.

---

[5] Such a requirement is also necessary so all parties to the settlement are put on notice that the compromise, release, settlement or statement is being disavowed. Those parties may then pursue their rights, including the preparation of a defense and, if applicable, an immediate demand for return of consideration paid or given as part of the release, compromise or settlement agreement.