Argued and submitted December 14, 1995, reversed and remanded May 15, petition for review denied September 24, 1996 (324 Or 229)

# Lowell A. PATTERSON,
*Appellant,*

*v.*

# AMERICAN MEDICAL SYSTEMS, INC.,
*Respondent.*

(9411-08042; CA A88910)

916 P2d 881

Christine Coers-Mitchell argued the cause for appellant. With her on the briefs were Don G. Carter and McEwen, Gisvold, Rankin, Carter & Streinz.

Christopher W. Thompkins argued the cause for respondent. With him on the brief were Paul R. Duden and Tooze, Shenker, Duden, Creamer, Frank & Hutchison.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

Plaintiff brought this products liability action to recover damages for alleged defects in a penile prosthesis manufactured by defendant. The trial court granted defendant's motion for summary judgment on the ground that plaintiff had released all claims against defendant as part of the settlement of a previous case. ORCP 47. Plaintiff appeals from the subsequent judgment, and we reverse.

In 1987, plaintiff sued defendant, alleging that the first two prostheses manufactured by defendant that had been implanted in him were defective. He sought damages in excess of $140,000. He settled the claims in 1988 for $12,000. At the time of the settlement, plaintiff was using a third prosthesis manufactured by defendant. As part of the settlement, he executed a release that includes the following provisions:

> "There is now pending in the United States District Court for the District of Oregon a case entitled *Lowell A. Patterson, Plaintiff, v. American Medical Systems, Inc., a Minnesota Corporation, Defendant,* Civil No. CV88-77MA. The parties desire to compromise and settle their differences and any and all other claims that LOWELL A. PATTERSON has or might have asserted against AMS.

> "* * * * *

> "IN CONSIDERATION of [AMS' payment to him of $12,000], LOWELL A. PATTERSON hereby accepts the payment in full settlement and satisfaction of all claims, charges, actions and lawsuits of every nature and kind whatsoever, known or unknown, suspected or unsuspected, past, present or future, on account of or in any way related to LOWELL A. PATTERSON'S use of any penile prosthetic device manufactured or sold by AMS, which he has or might have asserted against AMS now or in the future.

> "LOWELL A. PATTERSON releases, acquits and forever discharges AMS and each of its subsidiary or parent corporations, individual directors, officers, employees, agents and insurers, individually and collectively, and any and all other persons who might be claimed to be liable, of and from any and all claims, charges, actions and lawsuits described in the preceding paragraph."

This action was filed in 1995. It also alleges claims of strict liability, negligence and breach of warranty in relation to a prosthesis manufactured by defendant. The prosthesis in question was implanted in plaintiff in 1991. Before that implant, plaintiff had received another prosthesis in 1989 that replaced the one that he was using at the time of settlement.

Defendant argues that plaintiff unambiguously released all future claims against defendant related to *any* prosthesis that he might receive at *any* time. Plaintiff argues that the release is either unambiguously limited to the claims involved in the previous lawsuit or is ambiguous and requires the evaluation of extrinsic evidence to determine the intent of the parties. In either event, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment. Under ORCP 47 C, our inquiry is whether there exists a genuine issue of material fact about what the parties intended by the 1988 release agreement. We draw all inferences of fact against defendant, the moving party, and in favor of plaintiff, the nonmoving party. *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243 (1996).

A release is a contract and is subject to the ordinary rules of contract construction and interpretation. *Ristau v. Wescold, Inc.*, 318 Or 383, 387, 868 P2d 1331 (1994). If the terms of the release unambiguously express the intent of the parties, it must be enforced accordingly. If they are ambiguous, then the trier of fact is to ascertain the intent of the parties and construe the contract consistently with their intent. *OSEA v. Ranier School Dist. No. 13*, 311 Or 188, 808 P2d 83 (1991). An ambiguity exists in a contract if the contract is capable of more than one sensible and reasonable interpretation. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). Inherent in the purpose of a release agreement is a promise to abandon a claim or right that is within the contemplation of the parties. *Lindgren v. Berg*, 307 Or 659, 665, 772 P2d 1336 (1989). Before a release is valid, there must be both the knowledge of the existence of the claim and an intention to relinquish it, in the absence of a specific promise to release liability for unanticipated claims. *See Hansen v. Oregon Humane Soc.*, 142 Or 104, 115, 18 P2d 1036 (1933) (holding that to be valid and

binding, a release must be executed with full knowledge of the import of what is being signed and with the intent to discharge from liability). Here, the issue is whether there exists an ambiguity in the 1988 release agreement about whether the parties intended that plaintiff release a claim for the prothesis implanted in 1991.

■     The first paragraph describes the litigation that was pending at the time of the settlement and states that plaintiff and defendant had agreed to settle that litigation and "any and all other claims" that plaintiff "has or might have asserted against" defendant. In a subsequent paragraph, plaintiff states that he accepted the settlement amount in full satisfaction of all claims "of every nature and kind whatsoever, known or unknown, suspected or unsuspected, *past, present or future*" that were "in any way related" to his "use of *any* penile prosthetic device manufactured or sold by AMS, which he has or might have asserted against AMS *now or in the future*." (Emphasis supplied.)

When the paragraphs are read together, they are reasonably susceptible to more than one meaning. The first paragraph is a recital paragraph and refers to claims, asserted or unasserted, that exist at the time of the agreement. The other pertinent paragraph describes the scope of the consideration for the release agreement. In that paragraph, the phrases "past, present or future" and "any * * * device * * * manufactured * * * in the future" could refer to the existing claims mentioned in the recital clause or they could refer to any prosthesis purchased at any future time by plaintiff from defendant.

The extrinsic evidence of the circumstances surrounding the formation of the release agreement may also be considered to explain the terms of the agreement to determine whether they are ambiguous. *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994). The extrinsic evidence demonstrates that at the time of the settlement, plaintiff was using the third prothesis that he had procured from defendant. The language in the release about future claims may refer only to that product. This action is based on a prosthesis that was not in use at that time and, arguably, was not within the contemplation of the parties. Consequently, there

is a possible inference that the release agreement did not cover the prosthesis that is the subject of this action.

It is axiomatic that a release cannot be construed to include claims not within the contemplation of the parties. In the light of the ambiguity in the language of the release and the inferences that can flow from the surrounding circumstances of the formation of the agreement, we conclude that the trial court erred when it granted summary judgment. As a matter of law, a genuine issue of material fact exists about whether the 1988 release agreement was intended to release a claim for a product that was not used by plaintiff until 1991.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

When plaintiff settled the previous case he unambiguously released all future claims that he might have against defendant arising from any penile implant that defendant manufactures. Because the majority finds an ambiguity in the release that does not exist, I dissent from its decision.

The majority is correct that the primary motivating purpose for the release was to settle the case that was pending in 1988.[1] It is also correct that the first paragraph of the release, which describes the parties' purpose in entering into the settlement, refers only to existing claims "that LOWELL A. PATTERSON has or might have asserted against AMS." The majority errs by allowing that general purpose to override the express words of the operative paragraphs of the release.

The second paragraph that the majority quotes is the crucial operative paragraph of the release; in it the parties described the claims that they released in the third paragraph. In describing those claims, plaintiff stated that he accepted the settlement amount in full satisfaction of all claims "of every nature and kind whatsoever, known or

---

[1] The extrinsic evidence on which plaintiff relies merely confirms that the parties focussed on the existing litigation in negotiating the settlement; there is no evidence concerning any consideration of the effect of the release on any claims that plaintiff might bring concerning other implants. The extrinsic evidence, thus, neither creates an ambiguity that is not otherwise present nor aids in construing the words that the parties used in the release.

unknown, suspected or unsuspected, *past, present or future*" that were "in any way related" to his use of "*any penile prosthetic device manufactured or sold by AMS*, which he has or might have asserted against AMS *now or in the future.*" (Emphasis supplied.)

The majority states that these references to future claims concerning "any penile prosthetic device" might refer only to the existing claims mentioned in the recital clause. 141 Or App at 54. If that were the intended effect of the release, there would have been no reason to include "in the future." A release of claims that plaintiff "has or might have asserted against AMS *now*" would cover existing but unasserted claims. The only purpose for including "in the future" is for the release to cover future claims. The fact that plaintiff was using the third implant at the time of the settlement supports this construction, as it shows that, when plaintiff executed the release, there was a definite possibility of future claims. The majority's suggestion that the reference to future claims may be limited to that third prothesis, 141 Or App at 54, has no textual support. It is simply not possible to construe the release to distinguish between future claims arising from existing devices and future claims arising from future devices.

The majority finds it hard to accept that the parties could have intended that plaintiff release claims involving yet unmanufactured devices. Given the history of this case, it is not surprising that the parties should have intended that result. Plaintiff had two failed devices manufactured by defendant and a third in place when the release was entered into. Defendant had reason to want to buy permanent peace with plaintiff and to inform plaintiff that his use of defendant's products in the future was at his own risk. The release by its terms puts an end to all future claims that plaintiff might ever have against defendant relating to penile prosthetic devices.

Although the majority cites recent cases in which the Supreme Court construed releases, it fails to understand the message that those cases convey. The court appears to be primarily concerned that each side be represented by counsel, as they were in this case. If that condition is met, it readily holds

a release to be unambiguous and enforces it according to its terms, without regard to the parties' actual intent, no matter how unfair the result may appear to be. Thus, in *Lindgren v. Berg*, 307 Or 659, 665-66, 772 P2d 1336 (1989), the court construed a release to cover fraud in the inducement of the release itself and held that, so construed, it was enforceable. In *Ristau v. Wescold, Inc.*, 318 Or 383, 388-89, 868 P2d 1331 (1994), it construed a release of claims that were "now existing" to include claims of fraud in the very transaction of which the release was a part. It did so despite authority from another jurisdiction that required a release of such claims to be explicit. If "now existing" was not ambiguous in that context, "any penile prosthetic device" and "in the future" are certainly not ambiguous in this context.

Because the majority strains to find an ambiguity that does not exist, I respectfully dissent.